Argued and submitted December 7, 1984, decree modified July 3, 1985

In the Matter of the Marriage of

ECHANIS,
*Respondent,*
*and*

ECHANIS,
*Appellant.*

(18,870; CA A31626)

702 P2d 433

James M. Habberstad, The Dalles, argued the cause for appellant. With him on the brief was Dick & Dick, The Dalles.

Dennis A. Hachler, Pendleton, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

In this dissolution case husband seeks to terminate his spousal support obligation. The trial court found that his monthly payments of $900 to wife were part of the property division and are therefore not subject to modification. We hold that the payments are spousal support and modify the decree to reduce those payments to $350 per month.

Husband is 65 and wife is 55 years old. Their 22-year marriage ended in 1975. At that time, husband was a partner with a one-half interest in a beer and wine distributorship known as the Umatilla Distributing Company. By the time of the hearing in this matter, the parties had worked there for over 27 years, but wife only began drawing a salary when she also became a partner in 1976. The decree of dissolution incorporated the parties' property settlement agreement. Wife received the family residence, including the furniture, appliances and household belongings, one-half of the parties' bank accounts and common stock, one-half of husband's undistributed share of partnership profits and one-half of husband's interest in Umatilla Distributing Company. Husband received certain life insurance policies and the other half of the parties' liquid assets and retained a one-quarter interest in Umatilla Distributing. The stipulated settlement was conditional upon wife's employment by Umatilla Distributing at a salary of $700 monthly, plus annual cost-of-living adjustments, for as long as she remained a part owner.

The decree provided that husband was to pay child support of $225 per month for each of their two children until each reached age 21, married or was no longer attending school. It further provided that, in discharge of his obligation to "support and maintain" wife, he would pay "alimony" of $500 per month until she died or remarried. As husband would come to be relieved of his duty to pay child support for each child, his "alimony payments" would increase by $200. Thus, when the parties' youngest child reached age 21 in 1976, wife began to receive $900 per month, the amount husband now seeks to terminate.

After the dissolution, husband earned $2,400 per month at Umatilla Distributing. Sometime in 1977 or 1978, the parties agreed to raise wife's monthly salary to $1,500 and husband's to $3,300. The apparent reason for husband's $900

raise was to enable him to meet his support obligation. In 1983, the parties and their other partner sold the business. Wife received a lump sum payment of $90,000 for her interest. Husband received $100,000 for his interest, with a down payment of $27,000, and the balance in monthly payments of $608.

Husband retired and seeks to terminate his spousal support obligation on the ground that the sale of the business, his principal source of income, and his resulting unemployment constitute a substantial change of circumstances which justifies that termination. The salient portion of the trial court's decision reads:

"For reasons stated I am of the opinion that this was a property division therefore modification is not legally possible.

"In their stipulated settlement they agreed to be equal partners in the family business and she was to continue working there. The support she was to receive served their objectives and was to come from the business. This was her share of the business, and its profits, and apparently bore no relationship to permanent alimony as that concept is normally considered.

"She was to receive a certain sum of money each month. This initially included child support. As the children became emancipated her support was to be increased by an identical amount so that she would always continue to receive the same amount of money. Since the children were emancipated shortly after the dissolution it may be inferred that this was anticipated when the settlement was signed.

"The money for her support was to come from the business. As her support increased his salary was also increased to compensate for it. The support offset made their respective incomes about equal, considering that he got the tax deduction, whereas she paid the tax. The total effect, considering the various tax consequences and reduced profits, was for them to continue to treat each as equal partners."

██ ██ Support orders may be modified, but divisions of property may not. *Horesky and Horesky,* 30 Or App 941, 569 P2d 34 (1977), *rev den* 281 Or 1 (1978). The controlling distinction between support and property divisions is the nature and purpose of the award. *Schaffer v. Schaffer,* 57 Or

App 43, 47, 643 P2d 1300 (1982). Husband's monthly payments of $900 are spousal support. The only evidence of the parties' income during their marriage is that at the time of the dissolution husband earned a monthly salary of $2,400 and was entitled to a share of the partnership profits. It is reasonable to assume that wife's initial monthly salary of $700 per month would not have been sufficient to support her at a level reasonably commensurate with that she enjoyed during the marriage. The need for support indicates that the payments are spousal support. *Esler and Esler,* 66 Or App 452, 673 P2d 1386 (1984). The statement in the decree that the payments were to be made in discharge of husband's obligation to support and maintain wife further demonstrates their nature and purpose. Other factors indicate that they were spousal support: They were labeled as such; they were paid monthly, with no interest accruing on any unpaid balance; both parties treated the payments as spousal support on their federal income tax returns; and wife had already received the "long half" of the property division. *Esler and Esler, supra.* Furthermore, the payments were to terminate on wife's death or remarriage. *See Fletcher and Fletcher,* 72 Or App 708, 711, 696 P2d 1182 (1985).

■　　Wife argues essentially that, because the ultimate source of husband's payments was the business, in which she received a one-quarter interest, the payments were part of the property division. She argues that the parties contemplated both at the time of the decree and in their later agreement to raise their salaries that the payments would be paid from husband's income from the business. Unlike the trial court, we are not persuaded by that argument. That the source of those payments was husband's income from the business does not alter their nature from support to a distribution of marital property. *Hadfield and Hadfield,* 40 Or App 109, 594 P2d 433, *rev den* 287 Or 1 (1979).

■ ■　　Having determined that the payments are spousal support, the next issue is whether they should be modified. The moving party must show a substantial change of circumstances that was not contemplated at the time of the decree as a basis of the spousal support award. *Harden and Harden,* 67 Or App 687, 690, 679 P2d 348, *rev den* 297 Or 339 (1984). Both parties testified that, at the time of the dissolution, they did not consider what would occur with respect to the spousal

support payments if husband were to become unemployed. The sale of the business evidently was not contemplated. We conclude that there has been a substantial change in circumstances which justifies a modification of the decree. *See Ronnfeldt and Ronnfeldt,* 65 Or App 184, 670 P2d 229 (1983); *Hockema v. Hockema,* 18 Or App 273, 524 P2d 1238 (1974).

Husband now receives only $608 monthly from the sale of the business and approximately $500 in interest from his savings. He does not intend to return to work full time, but says he might work as a laborer during the summer. There is no evidence of what he could earn in that employment. He has remarried, and his present wife does not work. She had approximately $20,000 in savings when she married husband approximately ten years ago, and that money was used to buy an interest in a warehouse. In 1983, husband had $51,500 in a money market fund and $3,008 in a retirement account. He also owned two vehicles worth $4,800-$4,900 each and a house and furniture worth $25,000. At the time of the hearing, he still owned the stocks and life insurance awarded to him and had $13,000 remaining in a savings account from the down payment on the sale of the business. Together, husband and his present wife incur monthly expenses of $3,029. They have been drawing from their savings to meet their monthly expenses.

Wife has not returned to work since the sale of the business, despite her efforts to find employment. Although she has only an eighth grade education, she has taken college courses in computers, word processing, typing and real estate and had gained substantial experience in operating a business while she worked as a manager and secretary at Umatilla Distributing. She has received one job offer modeling furs, but there is no evidence of what she could have earned. Apart from the $900 support payment, she receives between $300 and $400 in interest from savings. She has approximately $75,000 in savings, the family residence, which is listed for sale at a price of $60,000 and is encumbered by a mortgage of over $29,000, and a $50,000 equity in a warehouse. Her monthly expenses total approximately $1,500.

It is obvious that husband can no longer afford to make spousal support payments in the amount of $900 per month. We have often stated that the amount of support

which the contributing spouse must pay must not exceed the ability to pay or preclude the ability to provide self-support. *Watters and Watters,* 47 Or App 483, 486, 614 P2d 589 (1980); *McClellan and McClellan,* 35 Or App 437, 439, 581 P2d 956 (1978); *Hockema v. Hockema, supra.* On the other hand, wife cannot be expected to live solely on her interest income. Both parties have savings to supplement their incomes. We find it most equitable to decrease husband's payments to $350 per month.

Decree modified to provide that spousal support be reduced to $350 per month, as of March 30, 1984. Costs to appellant.