Argued and submitted July 10, 1998, designation of monthly payments reversed,
otherwise affirmed on appeal; reversed and remanded on cross-appeal
May 12, 1999

In the Matter of the Marriage of

Judy Rae THOMAS,
nka Judy Rae Bates,
*Respondent - Cross-Appellant,*
*and*

Jackie Dwaine THOMAS,
*Appellant - Cross-Respondent.*

(96DO1623DS; CA A99432)

981 P2d 382

James C. Farrell argued the cause and filed the briefs for appellant - cross-respondent.

Randolph Garrison argued the cause for respondent - cross-appellant. With him on the brief was Randolph Lee Garrison, P.C.

Before Landau, Presiding Judge, and Deits, C. J.,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Deits, C. J., *vice* Riggs, J., resigned.

## WOLLHEIM, J.

Husband appeals from the judgment denying his motion to modify the parties' judgment of dissolution and makes three assignments of error. Wife cross-appeals from the supplemental judgment denying her motion for attorney fees. On *de novo* review of husband's appeal, ORS 19.125(3), we affirm in part and reverse in part. On wife's cross-appeal, we review for abuse of discretion, ORS 20.075(3), and remand for findings of fact and conclusions of law consistent with *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 957 P2d 1200, *clarified on recons* 327 Or 185, 957 P2d 1200 (1998).

Husband and wife married in 1981. Husband retired from the Marine Corps in 1994 and the parties moved to Oregon, where they had bought a home before husband's retirement. After relocating to Oregon, husband worked full time for $8 an hour and wife worked part time for $7.50 an hour. In addition, husband received monthly military benefits: $243 for retirement benefits and $938 for active duty disability. The parties' last joint tax return showed an adjusted gross income of $40,046.

The parties separated in June 1996, and a month later discussed the financial aspects of ending their marriage. Husband asked wife if she planned to remarry and wife indicated she did not. An agreement was subsequently reached regarding payments husband would make to her on a monthly basis. The amounts reflected in the parties' judgment of dissolution are not in dispute here. During the dissolution proceedings, neither party retained an attorney. Wife filed her petition; husband was served in Texas, and a default judgment was entered against him when he failed to appear. The judgment dissolving the parties' marriage was entered November 1996. It provided, in part:

> *"Distribution of Real Property*: The real property, which is known as the family home and land * * * be distributed as follows: the house is up for sale, the husband shall continue payments of $1281.00 to run the house until it is sold and shall be responsible for all expenses related to the house until it sells. All equity or refunds shall be paid to wife when sold. The wife may live in the house until it sells. * * *

*"Spousal Support*:

"[Husband] shall pay to [wife] the amount of $700.00 per month, as agreed upon, for her maintenance and support, such payment to begin on the 1st day of the month after the house * * * is sold and to continue on the 1st day of each month thereafter until the death of the wife."

Both parties remarried in December 1996. Husband and his new spouse reside in Texas, while wife and her new spouse inhabit the parties' former home while awaiting its sale.

In March 1997, husband moved for an order modifying the parties' judgment of dissolution to eliminate further money payments to wife. Husband characterized all of the payments as spousal support and argued, in part, that wife's remarriage presented an unanticipated substantial change of circumstances. He contended that the salary of wife's new spouse augmented wife's income sufficiently to eliminate her need for support from him.

At the modification hearing, wife testified to house-related expenses in excess of $1,100 each month. At that time, her average monthly net income was approximately $800. Wife's new spouse contributed an additional gross income to their household that ranged between $1,198 and $1,527 monthly. The couple's 1996 joint tax return showed an adjusted gross income of $26,318.

At hearing, the trial court denied husband's motion, holding that all of the payments to wife represented a division of the parties' property rather than spousal support and were not capable of judicial modification. Alternately, the court found that if the $700 payments were not part of a property division but were treated as they are labeled in the dissolution judgment as spousal support, the payments would still be unmodifiable because their purpose—to provide an income to wife until her death—had not been fulfilled. The trial court also denied wife's motion requesting attorney fees. This appeal and cross-appeal followed.

■     Husband first assigns error to the trial court's finding that the monthly payments of $1,281 to wife while the family home is up for sale constitutes a division of the parties'

property rather than spousal support. In response, wife notes she was awarded all prospective equity and refunds resulting from the house's sale. She argues that husband's payments are for the house's maintenance, not her own, and are meant to facilitate her realization of the court's award when the property changes hands.

■ ■   The distinction between a property division and spousal support in a judgment of dissolution is important because support orders are judicially modifiable, while property divisions are not. *Horesky and Horesky*, 30 Or App 941, 569 P2d 34 (1977), *rev den* 281 Or 1 (1978). The difference between the two, however, is not always obvious and is discerned by discovering the nature and purpose of the award as revealed by the facts of each case. *Schaffer and Schaffer*, 57 Or App 43, 47-48, 643 P2d 1300 (1982).

Here, as noted in the parties' judgment of dissolution, wife was to receive all equity and refunds resulting from sale of the family home. Husband's monthly payments of $1,281 were remitted to "run the house" until it sold, but those payments were not limited to that amount; husband was, in fact, responsible for *all* house-related expenses. The nature and purpose of the award was, therefore, to present wife with a property asset and then maintain it so she could ultimately realize its liquidated value. The trial court did not err in finding that husband's monthly payments of $1,281 are part of an unmodifiable property distribution.

■   Husband's second assignment of error is that the trial court incorrectly categorized as property distribution the prospective payments of $700 a month that husband was to make to wife following sale of the parties' house. On appeal, husband argues that those payments are meant as labeled in the dissolution judgment, *i.e.*, to provide spousal support. Wife contends that the payments are property because they represent a division of husband's military benefits.

■   A party's need for spousal support dictates that payments made to meet that need should be acknowledged as such, *Echanis and Echanis*, 74 Or App 188, 192, 702 P2d 433 (1985). In *Echanis*, the trial court held that the husband's monthly payments of $900 to his ex-spouse were part of the

couple's property division because the money was drawn as income from the husband's business. In reversing, we said, "[t]he need for support indicates that the payments are spousal support" and noted that the wife's salary of $700 per month, without the husband's contribution, would have been insufficient to support her at a level commensurate with that which she enjoyed while married. *Id*. Similarly, in *Esler and Esler*, 66 Or App 452, 673 P2d 1386 (1984), the wife's inability to maintain her predissolution standard of living without assistance was an important factor in causing us to reverse the trial court and hold that the monthly payments received from her husband represented spousal support, not a property division. *Id*. at 455.

◾ Here, husband's prospective contributions to wife should also be categorized as support, based on wife's need at the time of the dissolution judgment.[1] At the parties' hearing, wife testified that after her residence sold, $500 of each support payment would be for housing expenses, while $200 would pay for medical insurance. The $700 payments, therefore, would be in keeping with the statutory objective of enabling wife "to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that it is possible." ORS 107.105(1)(d)(M). The earmarks of support are further borne out in that the payments were to terminate at wife's death, *Echanis*, 74 Or App at 192, rather than continue to her estate. Those characteristics are also bolstered by the fact that the parties contemplated the payments to be prospective "spousal support" in the terms of the dissolution judgment.

◾ In his final assignment of error, husband asserts that the trial court erred in finding that wife's remarriage was not an unanticipated substantial change of circumstances that eliminated the need for further support from husband. Husband argues that the additional income from wife's new

---

[1] It is true that husband and wife agreed that the $700 payments were to correspond roughly to one-half of husband's military benefits plus $100. Nothing in the record, however, concretely indicates that the payments were meant as more than a sum that could be easily supplied from that source. The fact that retirement funds or business endeavors provide the ability to pay spousal support does not change the nature of those payments from support to property. *Echanis,* 74 Or App at 192; *Hadfield and Hadfield*, 40 Or App 109, 109-10, 594 P2d 433 (1979).

spouse offsets the need for continued support. Wife responds that, even if both sets of payments are spousal support, they should nevertheless remain unmodified because the respective purposes for each have not been satisfied. She argues that the house has not yet sold, justifying continued payment of $1,281. She also argues that the $700 payments are meant to provide her a retirement income, a goal similarly unmet.

Spousal support can be modified or terminated if there has been an unanticipated, substantial change in the circumstances of the parties. *Johnson v. McKenzie*, 100 Or App 640, 643, 787 P2d 1306 (1990). As a matter of law, remarriage by itself does not constitute such a change. *Grove and Grove*, 280 Or 341, 355, 571 P2d 477 (1977). However, remarriage can justify modification of an initial support award when it results in fulfillment of the award's purpose. *Bates and Bates*, 303 Or 40, 46, 733 P2d 1363 (1987). An "award's purpose" refers to the factors enumerated in ORS 107.105(1)(d) that a trial court shall consider in determining the propriety and amount of spousal support.[2] *Hall and Hall*, 86 Or App 51, 54, 738 P2d 218 (1987). Where it is impossible to ascertain on which statutory factor the award is based, "our task is to maintain the relative positions of the parties as established in the initial decree in light of their changed circumstances." *Bates*, 303 Or at 46. We presume, in those instances, that the original support award reflects the most equitable distribution of income between the parties. *Id*. at 47.

Here, neither party foresaw wife's remarriage, thus making it an unanticipated event. However, we find that what little change has occurred in wife's circumstances as a result of her remarriage does not rise to the level necessary to warrant modification of support at this time. In this case,

---

[2] The factors contained in ORS 107.105(1)(d) include: (1) length of marriage; (2) age and health of the parties; (3) a spouse's contribution to the education and earning power of the other; (4) earning capacity of each party; (5) a party's need for retraining to become self-supporting; (6) a party's extended absence from the job market as a homemaker; (7) presence of dependents; (8) tax consequences to each party; (9) long-term financial obligations of the parties; (10) cost of health care; (11) standard of living established during marriage; (12) cost of life insurance for party paying support; and (13) any other matter relevant to the parties' ability to maintain a standard of living not overly disproportionate to that enjoyed during the marriage.

there is no indication that the initial support award was given for any other reason than to allow wife "to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that it is possible." ORS 107.105(1)(d)(M). The parties' last joint tax return showed a gross income of over $40,000 before the dissolution of their marriage. In contrast, the record shows that wife and her new husband's gross income for 1996 was $26,318. Based on that comparison, we cannot say that the support presently paid to wife disproportionately elevates her standard of living. We hold, therefore, that husband's prospective support payments to wife do not warrant modification at this time.

As a final matter, we address wife's cross-appeal, where she contends that the trial court erred in not awarding her attorney fees. We review for abuse of discretion. Some time after the trial court entered its judgment in this matter, the Supreme Court decided *McCarthy* and laid out the elements needed before review of an award of attorney fees can take place. As a result, before we can review the trial court's decision for abuse of discretion, ORS 20.075(3), it must identify on the record the relevant facts and legal criteria that support its decision to deny attorney's fees to wife. *Id.* at 96. Here, the trial court failed to provide any of these elements in its letter denying wife's request.

On appeal, judgment designating prospective monthly payments of $700 as property division reversed and reinstating their designation as prospective spousal support; otherwise affirmed. On cross-appeal, reversed and remanded for further proceedings consistent with *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 957 P2d 1200, *clarified on recons* 327 Or 185, 957 P2d 1200 (1998).