Argued and submitted May 28, resubmitted en banc November 5, 2003, affirmed February 4, petition for review denied June 15, 2004 (337 Or 160)

In the Matter of the Marriage of

Douglas R. MEDLYN,
*Appellant,*

*and*

Lois F. MEDLYN,
*Respondent.*

92-DO-0059; A118268

83 P3d 945

Gerald A. Martin argued the cause for appellant. With him on the brief was Francis & Martin.

David C. Glenn argued the cause for respondent. With him on the brief was Glenn, Sites & Reeder, LLP.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Brewer, Schuman, and Ortega, Judges.

WOLLHEIM, J.

Linder, J., dissenting.

## WOLLHEIM, J.

The parties' 26-year marriage was dissolved in 1993. In doing so, they entered into a stipulated agreement that required husband to pay spousal support for eight years. In 2001, wife moved to modify husband's support obligation due to a substantial and unanticipated change in circumstances. The trial court granted wife's motion. Husband appeals and, on *de novo* review, ORS 19.415(3) (2001),[1] we affirm.

At the time of the dissolution in 1993, wife suffered from a back injury that she had sustained in a 1978 automobile accident. During the dissolution proceeding, she requested temporary spousal support. Wife was not working at the time and had no other source of income. She argued that her potential income was limited because of her back injury. Additionally, wife argued that she could not work while husband argued that wife could work. The parties entered into a stipulated spousal support settlement. That settlement was incorporated into the dissolution judgment and required husband to pay spousal support to wife for eight years, beginning at the rate of $800 per month and decreasing every two years. The dissolution judgment provided that husband was to make his final payment in April 2001.

After the 1993 dissolution, husband became unemployed and, because of that change in circumstances, sought modification of the judgment to reduce his spousal support obligation. Husband's support payments were lowered, but the eight-year duration of the payments was unaffected.[2]

Sometime between 1997 and 2000, wife suffered spinal fractures. In 2000, wife's doctors determined that she should not work and the Social Security Administration (SSA) determined that she was totally disabled. In 2001, wife moved for modification of the dissolution judgment to provide for permanent spousal support at the rate of $1,300 per

---

[1] ORS 19.415(3) was amended in 2003. The amendments apply only to judgments entered on or after the effective date of the 2003 act. Or Laws 2003, ch 576, § 90a. Thus, the 2001 statute applies.

[2] At the time of the 1994 modification, although husband's circumstances had changed, wife's had not. We therefore measure the change in wife's circumstances from the point of the 1993 dissolution.

month. In support of that motion, wife stated that, since the modification of husband's support obligation in 1994, "there have been substantial changes in my financial circumstances and abilities." Specifically, wife stated:

> "At the time the original decree was entered and at the time of the modification of the decree, I had degenerative back problems but was not restricted from employment. In both March and September of 2000, I had two episodes where my back broke because of activity."

Wife further stated that, because of those incidents in 2000, she was "unable to work or seek employment due to the degenerative nature of my back disease and injury." Finally, wife stated that SSA determined that she is totally disabled, that she began receiving Supplemental Security Income (SSI), and that her doctors recommended that she not work. Husband opposed the motion.[3]

The trial court concluded that there had been a substantial and unanticipated change in circumstances. Specifically, the trial court found that, although wife "was aware that she had back problems at the time of the dissolution in 1993, she was not aware of the compression fractures or that she would be totally disabled." The trial court modified the spousal support award to $800 a month. On appeal, husband challenges the conclusion that wife has experienced a substantial change of circumstances.

ORS 107.135[4] controls whether a modification of spousal support is proper. ORS 107.135 provides, in part:

> "(2) In a proceeding under this section to reconsider the spousal or child support provisions of the decree, the following provisions apply:
>
> "(a) A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary

---

[3] By the time wife filed her motion for modification, husband's income exceeded his income at the time of the 1993 dissolution and the 1994 modification.

[4] Although the current version of ORS 107.135 applies to this case, the 1999 amendments to ORS 107.105, introducing the term "unanticipated" and providing for three different types of spousal support, do not apply. Or Laws 1999, ch 587, § 3.

expenses to either party, is sufficient for the court to reconsider its order of support[.]"

The parties do not discuss the statute. They do, however, dispute whether wife's change in circumstances is both substantial and unanticipated. The arguments that the parties make, though not directly citing the statute, work within the framework of ORS 107.135 and relate to this court's construction of that statute.

Although the term "unanticipated" does not apply to this case through operation of the statute, for many years Oregon case law has required a substantial and unanticipated change in circumstances before a court can modify an award of spousal support. *Thomas and Thomas*, 160 Or App 365, 371, 981 P2d 382 (1999); *Johnson v. McKenzie*, 100 Or App 640, 643, 787 P2d 1306 (1990) ("A party moving for modification of spousal support must show, not only a substantial change of circumstances, but also that the change was not contemplated at the time of the judgment of dissolution."). Under that standard, wife is entitled to modification of the support award.

The trial court found that wife's change in circumstances was substantial. The trial court's letter opinion states, in part:

> "The Court's been referred to *Fellows [and] Fellows*, 124 Or App 476, [8]62 P2d 1325 [(1993)], which deals with circumstances similar to this case. The Court finds that *although [wife] was aware that she had back problems at the time of the dissolution in 1993, she was not aware of the compression fractures or that she would be totally disabled. It is obvious that she does not have the ability to earn income and that she's currently living at a level far below that when the parties were still married. This constitutes as a substantial change of circumstances.*"

(Emphasis added.)

Wife testified that she was not totally disabled at the time of dissolution in 1993, but that she is now totally disabled and that her physician and the SSA concurred with that assessment. Wife's testimony regarding her outlook at the time of the dissolution was as follows:

"[COUNSEL]: In 1993, did you have an expectation that you could work?

"[WIFE]: In my heart of hearts, yes.

"[COUNSEL]: Did you anticipate then that this back problem would result in you not being able to get employment?

"[WIFE]: No. I knew it would be limited employment due to it, but I didn't think that I would wind up being totally disabled, no."

The trial court impliedly found wife's testimony credible. *Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000).

Wife's statement that she *hoped* to be able to work and the declarations of her doctors and the SSA, when combined with other evidence in the record, support wife's position that she has experienced an unanticipated change in circumstances.[5] In 2000, wife had two different compression fractures of the spine. Three MRIs showed that she has severe degenerative disc disease and herniated discs at T8 and L1. Additionally, the difference between "little or no income" and "no income" is a substantial one. When one compares the evidence in the record regarding the circumstances at the time of the dissolution and the evidence regarding wife's current physical condition, it is apparent that wife's physical condition has unexpectedly deteriorated, resulting in a substantial and unanticipated change in circumstances.

Even if the parties were aware of one spouse's health problems at the time of the first modification, an unanticipated deterioration of that spouse's physical condition can

---

[5] After the dissolution, wife attempted to supplement her income by purchasing used furniture and selling it on consignment at a friend's antique store. That effort produced very minimal income. Additionally, at the time of dissolution, the parties had about 15 to 20 head of registered Angus brood cows. Wife explained that she did all the feeding and watering of the cows and the pulling of their calves. She also hauled hay, loaded it and grain into a pickup, and unloaded it to feed the cattle. In 1993, she was able to do everything associated with caring for the cattle.

Although, as the dissent points out, wife stated that she would be able to care for the cattle at the present time, it would be with different consequences. Wife stated that she would be able to take care of cattle with disability to herself. Thus, wife is no longer able to care for cattle to the same extent that she was at the time of dissolution. She no longer has the same physical ability, as shown by her doctor stating that she should not work.

constitute an unanticipated change in circumstances. *Fellows*, 124 Or App at 478; *see also Tomos*, 165 Or App at 88-89 (although the wife was partially disabled before the original support award, she also suffered from illnesses arising after the dissolution, which, although not fully disabling, constituted a substantial change in circumstances). In this case, wife's description of her physical condition at the time of dissolution differs significantly from that of her current physical condition. At the time of dissolution, wife stated that she was "disabled." At the time of dissolution, wife said that, due to her disability, her potential income was "minimal" and her employment options were "[v]ery, very, very limited." Furthermore, wife's condition did not prevent her from selling used furniture on consignment after the dissolution or taking care of the parties' cattle. However, wife is no longer working and her testimony is that she is now *"unable* to work" and *"unable* to earn *any form* of income." Though wife was not working at the time of dissolution, there is a material difference between being able to work and becoming unable to work.

Again, this case is similar to *Fellows*. At the time of dissolution in *Fellows*, the

> "wife acknowledged that she had osteoporosis and that she did not know how much longer she could work. After the dissolution * * * [t]he osteoporosis spread * * *. Her expenditures for prescription medication have increased * * *. Nothing in the record suggests that her condition will improve. Wife's ability to continue working is in doubt."

124 Or App at 478. This case is similar because, here, wife acknowledged at the time of dissolution that she was disabled and that her ability to work was minimal. Wife earned some income after the dissolution. Since the time of trial, however, wife's illness has worsened and she is now no longer able to work. Nothing in the record suggests that wife will improve. In *Fellows*, we ultimately held that, even if one spouse is ill at the time of dissolution, if that illness unanticipatedly becomes more severe and nothing in the record suggests that the spouse will improve, modification of spousal support is warranted.

The dissent argues that *Fellows* is inapposite because that case dealt with a modification of the *duration* of support and whether the evidence in *Fellows* satisfied the "substantial and unanticipated" standard was not at issue because "[t]he wife appealed, arguing that the support should be permanent; the husband did not cross-appeal." 192 Or App at 100 n 2 (Linder, J., dissenting). The dissent is correct that the specific issue in *Fellows* was whether the court should modify the duration of the support award. However, this court reviews spousal support awards *de novo* and, before a court will modify a support award in either duration or amount, the court must satisfy itself that the party requesting modification has met the threshold determination of a substantial and unanticipated change of circumstances. Thus, the determination in *Fellows* that the wife's change in circumstances warranted a modification of the duration necessarily included a determination that the wife's change in circumstances was substantial and unanticipated.

Wife has suffered a substantial change in economic circumstances. At the time of dissolution she was able to work, if only in a very limited way. At the time she requested modification, wife was totally disabled and unable to work at all. That change in circumstances was unanticipated. Although she had suffered a back injury at the time of dissolution, she did not anticipate suffering further injuries.

Affirmed.

**LINDER, J.,** dissenting.

The majority correctly acknowledges the legal standard that wife must satisfy to warrant modification of her spousal support award: a substantial and unanticipated change in economic circumstances. ORS 107.135(2)(a); *Thomas and Thomas*, 160 Or App 365, 371, 981 P2d 382 (1999). The majority's resolution of this case, however, is not faithful to that standard. The record does not establish that the degeneration of wife's back condition has changed her economic circumstances in either a substantial or unanticipated way. Accordingly, I dissent.

I begin by setting out the details in the record as to wife's physical condition at the time of dissolution.[1] Wife suffers from a degenerative back condition that is the result of a 1978 car accident. She has lived in chronic pain because of that condition and has been told that nothing can be done to resolve her condition. Wife described her ability to perform income-producing work as "very, very, very limited" since the accident.

Before the parties reached a settlement on spousal support, wife petitioned the court for temporary support. In support of that request, she submitted an affidavit in which she stated the following:

"* * * *I am disabled.* I have applied for disability with the State of Oregon. *I have no other source of income.* * * *

"* * * Because I am disabled, my potential income is minimal. * * * *If my husband dies, I will have no means of support.* I believe my husband should pay me permanent spousal support * * *."

(Emphasis added.) Relying on that affidavit, the trial court awarded wife temporary spousal support, specifically finding that wife was not then employed and had not been employed for six years before the support award.

After the trial court's award of temporary spousal support, the parties entered into settlement negotiations on the amount and duration of spousal support. Wife took the position that she was "disabled" as the result of her degenerative back condition and had no income. To establish her disability, she was prepared to offer the expert opinions of three physicians who would have testified that, at that time (*i.e.*, 1993), she was unable to work. According to husband, wife's

---

[1] As the majority describes, one year after the dissolution husband successfully obtained a modification of the spousal support amount because he became unemployed. As a result, the claimed change of circumstances in this case should be measured from the time of the 1994 modification. *See Rae and Rae*, 107 Or App 726, 730, 813 P2d 1107 (1991) (change of circumstances must be since the last modification to the dissolution judgment). At the time of the 1994 modification, although husband's circumstances had changed, wife's had not. The trial court and the parties looked to the wife's circumstances as they existed in 1993, because those were the same circumstances that presumably existed in 1994. I do the same.

inability to work was accounted for in arriving at the settlement for support. Significantly, wife did not testify to the contrary nor did she offer any evidence to challenge or contradict husband's testimony in that regard.

The questions now must be: what has changed and why? In the majority's view, what has changed is that wife has gone from having some limited ability to work to having none. As for why, the majority finds that wife's back condition has degenerated in a way that no one expected at the time of the dissolution. With respect, the record not only fails to adequately support the majority's conclusions in those regards, it affirmatively refutes them.

In determining that wife had some ability to engage in income-producing work at the time of dissolution, the majority relies heavily on wife's statements at the modification hearing that she *hoped* to be able to work and that, in her "heart of hearts," she did not believe that her degenerative back condition would leave her "totally disabled." 192 Or App at 94. But the majority's reliance on that testimony in that regard is too selective and requires disregarding evidence that we are not free to disregard. In particular, the evidence is undisputed that, despite wife's "hopes," (1) several of wife's doctors advised her at the time of the dissolution (*i.e.*, in 1993) that she could no longer work due to her degenerative back condition; (2) wife took the position in her affidavit to the court in 1993 that she was disabled to such a degree that, without either government disability payments or her husband's support payments, she would have "no means of support"; and (3) wife specifically agreed at the time of the hearing in this case that the statements in that 1993 affidavit were true when made and have proved correct. If wife's statements are to be the source of a conclusion that her condition has changed, then *all* of her statements must be considered, including her sworn statements in 1993, which should be judicially binding.

The majority also relies on wife's post-dissolution activities. Specifically, the majority points to wife's attempt to sell antiques on consignment and the fact that she cared for the parties' cows at the time of dissolution. 192 Or App at 94 n 5. In that regard, it is worth emphasizing that wife did

not state in her 1993 affidavit that she could not engage in activity of any kind; she said only that she could not produce income. Time proved her to be correct. Although wife hoped that selling antiques would provide some supplemental income, it did not do so and instead "wound up more of a hobby." Nor did wife earn, or expect to earn, any income tending the family's small herd of cows. She took care of the cattle out of necessity—that is, because no one else in the family was available to do so—and despite the considerable pain it caused her. In terms of wife's abilities to engage in either of those activities, nothing in the record suggests any change. Wife did not claim she could not still attempt to sell antiques on consignment; her point was that no significant income would come from it. Where tending cattle is concerned, wife specifically testified that she could probably still take care of the cattle if the need arose, although it would still cause her pain. The majority's reliance on those activities is thus misplaced. They were neither income-producing activities nor activities that show a change in wife's abilities.

Turning to wife's present condition, the majority accurately notes that wife has suffered two spinal fractures since the dissolution, that wife's doctors have told her that she is unable to work, and that she now receives total disability payments from the federal government (SSI). But given wife's condition at the time of dissolution, those changes do not support a conclusion that the deterioration of her back condition has changed her *economic* circumstances in any way. Although wife has suffered two additional spinal compression fractures since 1993, the advice that wife's doctors have given her about not working is the same advice they gave her in 1993: she was not physically able to work before, and she is not physically able to work now. In other words, her physical condition has degenerated further, but her inability to engage in income-producing work did not arise for the first time as a result of that further degeneration. As for wife's federal SSI award, nothing in the record suggests that wife could not have obtained that award in 1993. If anything, the record suggests the contrary. Wife specifically testified that she did not apply for an SSI benefit until her spousal support ran out. When she did apply, she succeeded. Wife was candid in that regard, testifying that she does not like

accepting SSI benefits because she does not believe that tax-
payers should have to support her. If the modification results
in a permanent award of spousal support, she intends to dis-
continue her SSI.

Thus, although the record establishes that wife's
degenerative back condition has continued to degenerate, the
record does not support a conclusion that wife's ability to
earn an income has changed as a result. Nor, more impor-
tantly, does it establish a *substantial* change in her ability.
The majority finds a substantial change in the difference
between the "little or no income" that wife said she could earn
in 1993 and the "no income" that she says she can earn now.
That is a difference of, at best, semantics, not substance, and
even the semantic difference has no real support on this rec-
ord. The majority all but reads "substantial" out of the test for
modifying a spousal support award.

Equally troubling is the majority's conclusion that
any change in wife's circumstances is unanticipated. By
wife's own admission, the car accident in 1978 resulted in a
degenerative back condition from which she has suffered
since. Degenerative disease, by definition, progressively
worsens over time. Notably, wife presented no medical testi-
mony that her degenerative condition has deteriorated in an
unanticipated way. Nor did she testify to that effect. On that
point, the record is wholly devoid of evidence.[2]

In granting the modification, although the trial
court made the requisite findings, it appears to have been

---

[2] At first blush, *Fellows and Fellows,* 124 Or App 476, 862 P2d 1325 (1993),
appears to provide some support for the majority's conclusion. In that case, we sug-
gested that ongoing doubt about employability, degeneration of a degenerative
health condition, and incurring predicted future medical expenses satisfied the
standard for modification. *Id.* at 478. In fact, however, whether the evidence satis-
fied that standard was not disputed on appeal in *Fellows.* The trial court in that
case had ordered a modification for six months. The wife appealed, arguing that the
support should be permanent; the husband did not cross-appeal. *Id.* The only issue
before us, therefore, was *duration* of the modification, not the modification itself.
Given the nature of the wife's degenerative health condition, her prognosis, and the
significant doubt about her employability, an indefinite award of support was
plainly warranted. *See Tomos and Tomos,* 165 Or App 82, 88, 995 P2d 576 (2000)
(citing *Fellows* for proposition that deterioration in obligee's preexisting condition
warranted indefinite spousal support). *Fellows* is not authoritative on the question
of whether grounds for modification can be established on such facts and we appro-
priately should disavow any suggestion that it is.

motivated as much or more by its after-the-fact regret that it modified the spousal support when husband became unemployed in 1994: "In retrospect, after listening to the testimony in this case, the Court believes that the Court reduced the spousal support more than it should have been at the time." The trial court's concern is hard to fault, and the majority may share it. But a modification may not serve as a mechanism to relitigate an earlier spousal support award. *Thomas and Thomas*, 181 Or App 128, 134, 45 P3d 954 (2002). Given the lack of evidence of a substantial and unanticipated change in wife's circumstances, wife's petition for modification should have been denied.

For those reasons, I dissent.

Deits, C. J., Landau and Haselton, JJ., join in this dissent.