Argued and submitted September 2, 2009, supplemental judgment for attorney
fees dated December 27, 2006, vacated and remanded; otherwise affirmed
March 24, petition for review denied July 8, 2010 (348 Or 523)

In the Matter of the Marriage of

Kristie PARESI,
*Petitioner-Respondent,*

*and*

Mark PARESI,
*Respondent-Appellant.*

Multnomah County Circuit Court
960160484; A134598 (Control), A140275

228 P3d 642

Helen C. Tomkins argued the cause and filed the briefs for appellant.

Ira L. Gottlieb argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

Husband in this consolidated appeal challenges (1) a supplemental judgment entered on December 8, 2006, that modified the amount of spousal support awarded to wife from $1,500 per month to $4,000 per month; (2) an order entered on September 30, 2008, that denied his motion to modify or terminate spousal support; and (3) supplemental judgments, dated December 27, 2006, and November 6, 2008, that awarded wife attorney fees and costs in the 2006 and 2008 proceedings, respectively. On *de novo* review, ORS 19.415(3) (2007), *amended by* Or Laws 2009, ch 231, § 2, we reach three conclusions: (1) that the 2006 spousal support modification was appropriate because wife had experienced a substantial and unanticipated change in economic circumstances, and maintenance support of $4,000 per month was appropriate to maintain wife's relative financial position in light of that change; (2) that neither modification nor termination of spousal support was necessary in 2008; and (3) that, with respect to husband's challenges to the supplemental judgments awarding wife attorney fees, the trial court erred in granting wife's petition for fees in the 2006 proceeding without first holding a hearing, but did not err in granting wife's petition for fees related to the 2008 proceeding. Accordingly, we vacate and remand the supplemental judgment dated December 27, 2006, awarding wife attorney fees, and otherwise affirm.

We take the following relevant facts from the record. Wife was 45 and husband was 44 at the time of the dissolution in 1996. The parties were married for 19 years and had one child. In 1983, wife was diagnosed with rheumatoid arthritis. The parties had health insurance during the marriage and paid for all of the necessary medical treatment for wife's condition. Husband worked for the Portland Police Bureau from 1974 to 2002. Wife worked until 1988 as an insurance claims adjuster, after which she was a homemaker. Immediately prior to the dissolution, the parties' income was approximately $6,500 per month with benefits, including health insurance.

At the time of the dissolution, wife was unemployed, but she was able to work full time at a job with a sedentary

activity level. She planned to attend law school and work as an attorney. The trial court divided the marital property and awarded spousal support to wife. Wife received custody of their son, and husband was ordered to pay child support.

In 2002, the trial court modified the spousal support award. At that time, wife's condition caused her pain, fatigue, and difficulty walking, which restricted her to working part time and made it impossible for her to attend law school. Immediately prior to the 2002 modification, wife earned approximately $1,600 per month working part time as a sales clerk at Nordstrom, received spousal support and child support payments from husband,[1] and received $1,100 per month in retirement payments. At about that same time, husband's income from his job at the Portland Police Bureau was approximately $9,100 per month.[2] The trial court awarded wife $1,500 per month of maintenance support, indefinitely.

Between 2002 and 2006, the severity of wife's existing health problems worsened and several new health problems developed. Wife reported that her pain worsened significantly (on a 10-point scale, from approximately 4 or 5 in 2002 to approximately 8 or 9 in 2006). Wife's fatigue increased to the extent that she was no longer able to work even part time.

In addition to the exacerbation of wife's pain, fatigue, and difficulty walking between 2002 and 2006, her rheumatoid arthritis degenerated to the extent that it caused or contributed to the development of numerous other medical issues that required her to have several surgeries, left her at risk of falling, and reduced her mobility to the extent that she required assistance to get out of bed and to do normal household chores. She also developed other medical problems that were not related to her rheumatoid arthritis, including high cholesterol, acid reflux, and severe dental problems. She suffered injuries that required medical treatment after falling in 2004.

---

[1] By that time, the parties' son was attending college. He lived on campus during the academic year and with wife during vacations and breaks.

[2] Husband's exact income at the time of the 2002 modification is unclear, as he began receiving retirement payments of approximately $4,900 per month in March 2002.

As a result of the worsening of wife's rheumatoid arthritis and the development of other medical problems, her medical expenses increased. In 2002, she had unreimbursed medical expenses of approximately $600 per month. By 2006, her unreimbursed medical expenses increased to approximately $1,250 per month. Her health insurance premium increased from $320 per month in 2002 to $570 per month in 2006. Her medical expenses would have been even higher, but because she was unable to afford many of the medications prescribed to her, she did not buy them.

In addition to her increase in medical expenses between 2002 and 2006, wife's income and earning capacity went from $1,600 per month to zero in that same time period. As noted, she worked for Nordstrom at the time of the 2002 modification. She was terminated from that job thereafter. She looked for work following her termination from Nordstrom, but eventually became unemployable for several reasons: she needed to lie down in the middle of the day; her arm and hand numbness prevented her from being able to write or type; and she was completely unavailable at times due to her illness.

Aside from the effect of her inability to work, two other factors reduced wife's income or assets. First, she was no longer receiving child support payments from husband because their son had completed college. Second, she sold her only substantial asset—the family home—to pay for her living expenses.

In December 2005, wife moved to modify the spousal support award. The court held a modification hearing in 2006. By the time of the 2006 modification hearing, husband had remarried and obtained new employment as a police chief in Nevada. Husband's new wife was employed and her income contributed to the payment of their joint expenses, including the joint purchase of a $559,000 home. Husband's household income was approximately $24,400 per month in 2006.

Husband testified that he could afford to pay an increase in spousal support and estimated that his household net worth was $1.4 million. Husband argued, however, that

wife had voluntarily chosen not to work, her increased medical expenses were insufficiently proved, and any increase in medical expenses was not unanticipated because rheumatoid arthritis is known to be a degenerative disease.

The trial court issued a letter opinion that contained extensive findings and conclusions. The court found that, after "weighing the credibility and demeanor of the witness[,]" there was "no indication that the witnesses were not believable."[3] The court also found that wife's medical expenses had increased substantially. On the issue of wife's reduced income and earning capacity, the court found that (1) "wife lost her last job, through no fault of her own"; (2) she "has become impoverished, almost becoming homeless in September 2006"; and (3) her income had been reduced from "over $5,000.00 monthly income" in 2002 to "$2,600 per month income [in 2006,] which is one-half the income she had available in 2002."

The trial court concluded that wife had experienced a substantial change in economic circumstances and that indefinite spousal support in the amount of $4,000 per month for maintenance was appropriate under the circumstances. Accordingly, the court entered a supplemental judgment reflecting that modification. Wife then submitted a petition for attorney fees pursuant to ORCP 68 and ORS 107.135(8). Husband objected, arguing that wife was able to pay her own attorney fees based on (1) the increase in the amount of spousal support that she had been awarded and (2) the lump sum payment of back spousal support that she was to receive because the trial court modified the spousal support amount retroactively to the date that she had filed the motion to modify. Without holding a hearing on husband's objections, the

---

[3] The trial court's credibility findings are particularly relevant as they relate to the testimony from wife and the other witnesses who described her increased medical expenses, which husband argued were insufficiently documented. To the extent that our analysis of the spousal support issue turns on whether wife and her witnesses provided an accurate description of her increased medical expenses, we defer to the trial court's demeanor-based finding that they were credible witnesses on that issue. *See O'Donnell-Lamont and Lamont*, 337 Or 86, 89, 91 P3d 721 (2004), *cert den*, 543 US 1050 (2005) ("In our *de novo* review of the record, we give considerable weight to the findings of the trial judge who had the opportunity to observe the witnesses and their demeanor in evaluating the credibility of their testimony.").

trial court entered a supplemental judgment awarding wife her fees and costs.

Husband timely appealed both of those judgments—that is, the 2006 supplemental judgment modifying spousal support and the 2006 supplemental judgment awarding wife attorney fees and costs. While those appeals were pending, husband sought to terminate, or in the alternative to modify, the spousal support award based on a substantial change in *his* economic circumstances. Husband testified that he had resigned under pressure from his new employment as a police chief in Nevada and had been unemployed for approximately one year. He further testified that his new wife had experienced a reduction in her commission-based income at her job. He testified that his household income was limited to a severance package of approximately $49,000, weekly unemployment benefits, retirement payments, and his new wife's reduced income. At that point, husband's income was approximately $18,500 per month.[4] Husband averred that his household expenses—excluding $4,000 per month of spousal support to wife—amounted to approximately $9,100 per month.

The trial court concluded that husband had failed to demonstrate that he had experienced a substantial change in economic circumstances and entered an order denying husband's motion to modify or terminate spousal support. Wife subsequently submitted a petition for her attorney fees and costs from that 2008 modification proceeding. Husband submitted his objection to wife's petition 19 days after wife submitted it. The trial court entered a supplemental judgment awarding wife her fees and costs without holding a hearing on husband's objections. Husband appealed both the order denying modification and the supplemental judgment awarding wife attorney fees and costs arising out of the 2008 proceeding. That appeal was consolidated with husband's appeal of the 2006 judgments.

■ We first consider husband's challenge to the 2006 supplemental judgment modifying the amount of spousal

---

[4] Our calculation of husband's household's monthly income does not include the income from husband's severance package.

support awarded to wife. ORS 107.135 provides that a "substantial change in economic circumstances" is a sufficient basis for a trial court "to reconsider its order of support[.]" In determining whether a substantial change in economic circumstances has occurred, the court considers, among other factors, a "change in the cost of reasonable and necessary expenses to either party," ORS 107.135(3)(a), and the "income opportunities and benefits of the respective parties from all sources," ORS 107.135(4)(a). "In addition to being substantial, [the] change in circumstances must be one that could not have been anticipated at the time of the judgment." *Boyd and Boyd*, 152 Or App 785, 788, 954 P2d 1281 (1998).

■      If a spouse adequately demonstrates a substantial change in economic circumstances pursuant to ORS 107.135, we modify the amount of spousal support awarded "to maintain the relative positions of the parties as established in light of their changed circumstances." *Bates and Bates*, 303 Or 40, 47, 733 P2d 1363 (1978); *see also Stutz and Stutz*, 156 Or App 146, 151, 965 P2d 456 (1998) ("We recognize, as did the trial court, that even this modified award of support may impose some hardship on husband. Nonetheless, it would be a greater hardship on wife to terminate support."). ORS 107.105(1)(d)(C) provides a nonexclusive list of factors that the court considers in establishing a just and equitable support award for spousal maintenance, which includes the duration of the marriage, the standard of living established during the marriage, and the parties' age, health, income, relative income and earning capacities, training and employment skills, work experience, and financial needs and resources.

Husband asserts that wife failed to show the requisite substantial change in economic circumstances with respect to the 2006 modification. He argues that wife failed to prove that her expenses increased. He also argues that wife is highly functional and has voluntarily chosen not to work. We disagree.

■      We begin by addressing the threshold issue whether the change was substantial. Here, the record demonstrates that, between 2002 and 2006, wife developed new health problems, some related to her rheumatoid arthritis and some

not.[5] Her new health problems substantially increased her actual medical expenses and would have increased her expenses even more if wife had been able to afford treatment for some of her less serious medical issues. In addition, wife's rheumatoid arthritis worsened in that time period, which further increased her medical expenses. Finally, wife experienced a dramatic reduction in her income and earning capacity when she was terminated from her employment and her health problems worsened to the extent that she was no longer able to work.[6] The record indicates that wife experienced a $1,600 per month reduction in income while her monthly health-related expenses (her unreimbursed medical expenses and her health insurance premiums) had increased by approximately $900 per month. In light of her monthly income and expenses, we conclude that the change in her economic circumstances was substantial.

■    We next address whether the change in wife's economic circumstances was unanticipated. Husband argues that any changes in her finances related to her medical condition were not unanticipated because rheumatoid arthritis is known to be a degenerative disease. However, in 2002, the trial court determined that a spousal support award of $1,500 per month was just and proper under the circumstances based on the expectations that wife's medical expenses would be less than $600 per month, that her health insurance premium would be approximately $320 per month, and that she would continue to earn $1,600 per month working part time. The scope and magnitude of wife's health problems directly or indirectly caused by her rheumatoid arthritis worsened to such an extent that we consider the resultant increase in medical expenses and decrease in income and earning capacity to have been unanticipated, that is, they were unforeseen at the time of the 2002 modification. *Cf., e.g., Medlyn and Medlyn*, 192 Or App 89, 94-95, 83 P3d 945, *rev den*, 337 Or 160 (2004) (concluding that the wife had

---

[5] We conclude that wife, through her testimony and exhibits, adequately proved that her medical expenses had significantly increased. We therefore reject husband's argument that wife's increased expenses were insufficiently proven.

[6] We reject husband's assertion that wife is highly functional and has voluntarily chosen not to work. That argument is not supported by the evidence or testimony from the 2006 modification hearing.

experienced an unanticipated change in economic circumstances when her existing back problem worsened due to compression fractures, to the extent that her ability to work had been reduced from partially disabled to totally disabled). Furthermore, wife developed new health problems that were unrelated to her rheumatoid arthritis between 2002 and 2006. Even if some increase in wife's medical expenses and health insurance premiums was expected at the time of the 2002 modification hearing, it was not anticipated that wife's monthly unreimbursed medical expenses would more than double or that her health insurance premiums would increase by almost 80 percent.

Moreover, the record establishes that wife was earning $1,600 per month in 2002 and that she could no longer work at the time of the 2006 modification hearing. Her termination from her job and her inability to work even part time were unanticipated at the time of the 2002 modification. Wife adequately demonstrated that her increased medical expenses and decreased income and earning capacity between 2002 and 2006 were not expected at the time of the 2002 modification. We conclude that modification was appropriate in 2006 because wife adequately demonstrated that she had experienced a substantial and unanticipated change in economic circumstances between 2002 and 2006.

■ We likewise conclude that the amount of spousal support awarded was appropriate to maintain the relative positions of the parties in light of their changed circumstances. At the time of the 2002 modification, wife lived a middle-class lifestyle similar to her lifestyle during the marriage, including having a home, health insurance, and reasonable medical treatment for health problems. Her income had been reduced by $1,600 per month at the time of the 2006 modification hearing. Wife's unreimbursed medical expenses created $650 per month in additional expenses, which does not include the medical treatments that she forwent because she could not afford them. As noted, her health insurance premiums increased by approximately $250 per month.

Moreover, husband was able to pay the additional $2,500 per month of spousal support that the trial court

awarded without affecting his ability to enjoy a standard of living that was significantly more affluent than the one that he enjoyed at the time of the 2002 modification. Husband's income at the time of the 2002 modification was approximately $9,100 per month, with approximately $5,700 per month in expenses. By contrast, husband's household income in 2006 was approximately $24,400 per month with expenses, excluding spousal support, of less than $10,000 per month. Husband acknowledged at the 2006 hearing that he could afford an increase in spousal support payments.

Considering the parties' relative financial positions in 2002 and 2006, we conclude that an increase from $1,500 per month to $4,000 per month was necessary to allow wife to adjust to the substantial and unanticipated change in her economic circumstances. Accordingly, the trial court did not err when it modified her spousal support award in 2006.

■ We turn to husband's challenge to the 2006 supplemental judgment awarding wife attorney fees and costs. He argues that the trial court erred in granting wife's petition for attorney fees and costs without first holding a hearing to determine whether an award of fees and costs was appropriate. According to husband, he was entitled to a hearing under ORCP 68 C(4)(c)(i) because he objected to wife's attorney fee petition.[7] Wife responds that husband was not entitled to a hearing because his objection failed to comply with the requirement in ORCP 68 C(4)(b) that an objection to a petition for attorney fees and costs "shall be specific and may be founded in law or in fact[.]" According to wife, husband's objection—which asserted that wife had an ability to pay her own attorney fees based on the increase in the spousal support award and the lump sum of back spousal support—was not specific enough to entitle him to a hearing.

We conclude that husband's objection was specific enough to comply with ORCP 68 C(4)(b) and that the trial court erred by not holding a hearing. Husband's response to wife's petition for attorney fees included a specific objection that was relevant to the court's determination of whether to award fees in a domestic relations case. *See, e.g., Niman and*

---

[7] ORCP 68 C(4)(c)(i) provides that the court "shall hear and determine all issues of law and fact raised" by the petition and the objection if "objections are filed in accordance with paragraph C(4)(b) of this rule[.]"

*Niman*, 206 Or App 259, 271, 136 P3d 105 (2006) (in a dissolution proceeding with a similar attorney fees statute, considering the "financial resources of the parties" and "any orders of support" in determining whether "it would be equitable to assign to one party or the other the obligation to pay attorney fees[ ]" (citing *Haguewood and Haguewood*, 292 Or 197, 638 P2d 1135 (1981))). Thus, husband's objection complied with ORCP 68 C(4)(b), and he was entitled to a hearing pursuant to ORCP 68 C(4)(c)(i). The trial court erred in granting wife's petition without holding a hearing.

■ Next, we address husband's challenges to the 2008 proceedings. Husband asserts that the trial court erred in concluding that he had failed to demonstrate a substantial change in economic circumstances so as to warrant modification or termination of spousal support. Even assuming, without deciding, that husband demonstrated a substantial change in his economic circumstances, we conclude that neither termination nor modification of spousal support was necessary to allow husband to adjust to the change in his economic circumstances.

Here, husband's financial position and standard of living, relative to wife's, remained essentially unchanged between 2006 and 2008, notwithstanding his reduction in income, but wife's financial circumstances—including her unemployment, inability to work, lack of assets, and significant medical expenses—remained the same or worsened during that period.[8] That is, all of the factors that supported the 2006 increase in spousal support continued to exist in 2008. By contrast, husband's household income, while reduced, was approximately $18,500 per month, with monthly household expenses of approximately $9,100. In addition to that income, husband had a severance payment and other assets on which to draw. Thus, we conclude that husband could continue paying $4,000 per month of spousal support to wife without imposing a disproportionate hardship on his household, and we further conclude that reducing or terminating support for wife would impermissibly diminish her relative

---

[8] *Cf. Bates*, 303 Or at 47-48 (concluding that reduction of spousal support was appropriate to allow the husband to maintain his relative financial position with the wife where the husband's household had tripled in size but his income had remained static and the wife's household size had remained static with an approximately 50 percent increase in her household income).

financial position. *Cf. Stutz*, 156 Or App at 151-52 (concluding that spousal support should not be terminated after weighing the proportionate hardship on each party); *Echanis and Echanis*, 74 Or App 188, 193-94, 702 P2d 433 (1985) (considering the husband's need to draw on his savings to make his spousal support payment in concluding that spousal support should be reduced where the spousal support payment amounted to more than 80 percent of the husband's household income and the husband's household monthly expenses were almost triple his household monthly income). Accordingly, in 2008, the trial court did not err in declining to modify the monthly award of $4,000 in indefinite spousal support.

Finally, we turn to husband's challenge to the court's award of attorney fees to wife in the 2008 proceeding, which requires minimal discussion. The trial court did not err in granting wife's petition without holding a hearing in 2008 because husband's objection to her petition was untimely. Thus, his objection failed to comply with ORCP 68 C(4)(b) (requiring objections to be served within 14 days after service of the attorney fee statement), and he was not entitled to a hearing under ORCP 68 C(4)(c)(i). We reject his argument without further discussion.

Supplemental judgment for attorney fees dated December 27, 2006, vacated and remanded; otherwise affirmed.