Argued and submitted November 1, 1999, affirmed January 12, 2000

In the Matter of the Marriage of

Ioana Maria TOMOS,
*Respondent,*
*and*

Jon TOMOS,
*Appellant.*

(94-7-275; CA A103510)

995 P2d 576

Les Rink argued the cause and filed the brief for appellant.

Darren Nienaber, Certified Law Student, argued the cause for respondent. With him on the brief were Theresa L. Wright and Lewis and Clark Legal Clinic.

Before Landau, Presiding Judge, and Linder, Judge, and Brewer, Judge.

BREWER, J.

**BREWER, J.**

Husband appeals from a judgment awarding indefinite spousal support to wife in this proceeding to modify the judgment dissolving the parties' marriage. Husband contends that the trial court erred in determining that his increased income and deterioration in wife's health and employability constituted changes of circumstances warranting an award of indefinite spousal support. On *de novo* review, ORS 19.415(3), we affirm.

The parties were married for 28 years. They have one adult child. Their marriage was dissolved in April 1995 pursuant to stipulation. The judgment awarded spousal support to wife in a "lump sum partial amount" of $7,500 and the further sum of $300 per month for two years. The judgment also provided:

"Neither party may seek relief from the court by any motion to modify * * * for a period of 30 months from the date of this decree * * * either party may make application to the court, based upon a material change of circumstances, concerning spousal support after 30 months from the date of this decree. For purposes of determining any change of circumstances in the future, [wife's] income for 1994 was approximately $16,000 and [husband's] income for 1994 was approximately $16,000."

In May 1998, wife filed this modification proceeding to re-establish spousal support. At the time of the July 1998 hearing on wife's motion, husband was 58 and wife was 54 years old. A brief history of the parties' circumstances preceding the dissolution of their marriage will place their current dispute in context.

Both parties received professional educations in their native country, Romania, before immigrating to the United States in 1976. Husband was trained in law and wife in architecture. Wife worked as a civil engineer from 1977 until 1985 and supported the family during a portion of that period while husband attended law school. Wife later worked in husband's law office and, after the parties moved to Oregon in 1987, was employed as a civil engineer designer until 1988. At that time, an on-the-job back injury forced wife

to leave that employment, because she was no longer able to work long hours at a drafting table. As a result of that injury, wife received a 37 percent permanent partial disability award and was paid monthly workers' compensation benefits until 1990. After wife's injury, the parties' purchased and remodeled several houses, using the proceeds of wife's benefits. Wife provided architectural services for those projects.

In 1994, the parties separated. At that time, wife went to work on a temporary basis for Multnomah County as a construction project manager. She primarily performed budgeting services, which she testified were indirectly related to her professional training. That job ended in 1996. Wife earned approximately $29,000 in 1995, the year of dissolution, and $25,000 in 1996. Wife's 1996 earnings also included income from a temporary job in which she performed translation work. Wife's income declined to approximately $10,000 in 1997, and she earned about $7,000 in the first half of 1998. Husband presented evidence that wife reported about $10,000 less than her actual income between 1995 and 1997. Husband also presented expert testimony that wife could earn between $25,000 and $33,000 per year in one of several professions for which he asserted she was qualified.

Wife testified that her health deteriorated substantially following the dissolution. Her back condition continued to bother her, and she suffered from depression, anxiety attacks, chronic laryngitis, diabetes, and complications associated with a head injury resulting from a fall. At the time of the modification hearing in July 1998, wife worked sporadically as an interpreter, received food stamps, and was covered under the Oregon Health Plan. Wife was using the proceeds of a second mortgage against her home that she secured in order to meet living expenses. Wife testified that, in spite of her health problems, she had applied for more than 70 employment positions since her temporary job as a translator ended in 1996. She testified that her job search was hampered by three factors: age, deteriorating health, and lack of up-to-date training in the engineering field. As a result, wife was unable to find full-time employment that would enable her to become wholly self-supporting.

After the parties separated, husband moved to Chicago, where he practices law. His income increased from about $16,000 in 1995 to at least $36,000 per year at the time of modification. Husband has remarried and has about $33,000 in consumer debt, including expenses for two trips he took to Europe with his current wife, and $7,500 in credit card debt for payments to wife in 1995. Husband testified that he cannot afford malpractice insurance or a secretary and that he has a heart condition that slows the pace of his work.

The trial court made the following written findings in the judgment modifying the dissolution judgment:

"1.   There has been a material change of circumstances in that economically [husband] is now making over twice the amount he was making at the time of dissolution of marriage, and that [wife] has improved her income, but that it is now declining.

"2.   There has been a further material change of circumstances in that [wife], due to a decision by the couple during the marriage, * * * turned from her career as an architectural draftsperson to pursue other economic opportunities, current lack of upgrade of computer skills, and her health, has made it difficult to obtain full time employment.

"3.   This was a long term marriage, and that indefinite spousal support is warranted."

In oral findings made on the record before the entry of judgment, the trial court also found that wife's health problems were genuine and rejected husband's charge that they were staged in order to advance a claim for extended spousal support. The court also found wife's testimony concerning her search for employment to be credible. The court further found that both parties had understated their incomes to some extent but that wife was living "tenuously." The court ultimately awarded indefinite spousal support to wife in the sum of $400 per month. In doing so, the court considered husband's other financial obligations and awarded an amount it considered necessary "to stave off total poverty" for wife. This appeal by husband followed the entry of judgment.

Husband makes three assignments of error. He first argues that the postdissolution changes in the parties'

incomes were not unanticipated and, in any event, are not substantial. Second, husband contends that wife's health has not deteriorated significantly and that there was no evidence that she is unemployable. Finally, husband asserts that the decision that wife would change careers was made during the marriage and, therefore, cannot furnish a change of circumstances. Husband also argues that wife's obsolete professional skills are immaterial, because she testified that her back injury prevented her from working as an engineer. Each of husband's claims of error challenges the existence of a substantial and unanticipated change of circumstances. Husband does not separately assign error to the trial court's decision to award indefinite spousal support or to the amount awarded.

■■ An award of spousal support may be modified based on a finding that there was a substantial, unanticipated change in circumstances since the time of the earlier award. *Maier and Maier*, 137 Or App 15, 18, 902 P2d 1214 (1995), *rev den* 322 Or 644 (1996). Although we review *de novo*, we defer to the trial court's express and implied credibility findings. *Short and Short*, 155 Or App 5, 18, 964 P2d 1033 (1998); *Patterson and Patterson*, 39 Or App 423, 428, 592 P2d 576, *rev allowed* 286 Or 631, *aff'd on remand* 41 Or App 97 (1979). We turn to husband's first assignment of error.

It is evident from the nature of the support provision in the dissolution judgment that the parties anticipated a 30-month "freeze" in the support award based, at least in part, on the expectation that a measure of equality in their incomes would persist. *See Johnson v. McKenzie*, 100 Or App 640, 643, 787 P2d 1306 (1990) (amount and duration of underlying support award demonstrated that court believed wife would be able to work full time). The judgment expressly recited that the parties' 1994 incomes of approximately $16,000 would furnish a baseline "[f]or purposes of determining any change of circumstances" relating to their incomes. At the time of modification, husband's annualized income of at least $36,000 was, proportionately, at least 150 percent greater than wife's annualized income of approximately $14,000. The trial court clearly believed that the gap in the parties' incomes both was real and would likely endure. Any possible understatement in wife's income would not have

bridged that gap appreciably, in view of the evidence that husband's current income was *at least* $3,000 per month.

■■ Husband's postdissolution increase in income alone would not constitute a change in circumstances warranting an increase in spousal support. *Grady and Grady*, 128 Or App 114, 117, 875 P2d 1174, *rev dismissed* 319 Or 626 (1994). However, in this case both parties have experienced changes in income that flow in opposite directions. The trial court did not err in finding that the changes in the parties' incomes were substantial and unanticipated at the time of dissolution.

Husband next argues that the court erred in relying on wife's health problems as a basis to reinstate spousal support. Husband asserts that the trial court did not adequately credit the evidence he presented, including, among other things, testimony from an investigator who observed wife doing strenuous yard work and evidence that wife has not been prevented from working as a result of her health problems.

The trial court found wife's testimony regarding her deteriorating health to be credible, and husband presents no compelling reason to disturb that finding. Wife not only suffers from a partially disabling back condition that preexisted the original support award, but she also suffers from diabetes, chronic laryngitis, stress, anxiety attacks, and depression, all arising after the judgment of dissolution was entered. She also experiences dizziness resulting from a head injury suffered in a fall that occurred after the dissolution. The cumulative effect of those problems, while not fully disabling, is nonetheless substantial. Wife was not required to show that she was literally unable to perform physical labor or manage desk work in order for her health problems to amount to a substantial change in circumstances. *See, e.g., Fellows and Fellows*, 124 Or App 476, 478, 862 P2d 1325 (1993) (substantial deterioration in the obligee's preexisting osteoporosis warranted modification awarding indefinite spousal support where her "ability to continue working [was] in doubt"). The trial court did not err in finding that wife's ability to support herself adequately following the dissolution has been reduced, at least in significant measure, by the

cumulative effect of her diverse ailments. Finally, husband contends that the trial court improperly relied on a change of circumstance that occurred before the parties' marriage was dissolved, namely, their joint decision that wife would leave her former profession and turn to other opportunities. In a related vein, husband challenges the court's determination that wife would have to upgrade her computer skills to return to that profession. Husband argues that computer education would not benefit wife, in view of her testimony that she was physically unable to work at a drafting table as a result of her chronic back problems.

Husband misunderstands the trial court's reasoning. The trial court found that wife's skills as an architectural draftsperson were outdated due to her protracted absence from the profession. However, the history of wife's absence from that profession merely explains why her skills are outdated; it does not purport to constitute an independent change of circumstances. Wife testified that she could not compete for civil engineering jobs, in part, because she lacked training in computer aided drawing. She also testified that her health problems interfered with her ability to perform full-time desk work at a computer. In spite of those disadvantages, wife testified that she has applied for numerous jobs, including work in the civil engineering field. The trial court found that her efforts to find work have been frustrated by a combination of health problems and outdated job skills. Based on its assessment of wife's credibility, the trial court did not err in relying on both problems in finding a substantial change in circumstances.

Affirmed.