Argued and submitted January 10, judgment modified to award wife 75 percent and husband 25 percent of funds in disputed Paine Webber accounts; otherwise affirmed May 18, 2005

In the Matter of the Marriage of

Donald H. TSUKAMAKI,
*Respondent*,

*and*

Diane TSUKAMAKI,
*Appellant*.

DR0204409; A122400

112 P3d 416

Mark Johnson argued the cause for appellant. With him on the briefs was Johnson Renshaw & Lechman-Su PC.

Craig M. Cowley argued the cause for respondent. With him on the brief was Gevurtz, Menashe, Larson & Howe, P.C.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge.*

ARMSTRONG, P. J.

Brewer, C. J., concurring.

---

\* Landau, J., *vice* Ceniceros, S. J.

**ARMSTRONG, P. J.**

Wife appeals from a dissolution judgment. She assigns error to the trial court's equal division of two Paine Webber accounts. On *de novo* review, ORS 19.415(3) (2001), we modify the trial court's judgment.

The parties were married in 1972 and have no children. They separated in 2001, and husband filed for dissolution in 2002. At that time, husband was a pharmacist, and wife worked in higher education. Throughout the marriage, both parties worked outside the home.

Through frugality, the couple has accumulated assets in excess of $1.5 million. Among those assets are the Paine Webber accounts, which were worth $454,758 at the time of trial and were jointly titled in the names of husband and wife. The funds in those accounts consist of the proceeds from the sale of certain stocks and cash gifts that wife received from her parents between 1984 and 2001. Wife's parents had owned a significant percentage of the shares in Thos. Iseri Produce Company (Iseri). As part of their estate plan, wife's parents began in 1984 to make annual gifts of Iseri stock to wife and her brother. Although her parents had the stock certificates for the gifts to wife issued in wife's name, they retained physical possession of the stock certificates and gave wife photocopies of them. In 1995, another shareholder purchased the Iseri interests of wife's parents, wife, and her brother. The sale of the stock in wife's name generated $431,578 in cash proceeds, which were deposited into an account at Paine Webber jointly titled in the names of both husband and wife. At some point between 1995 and the trial, wife transferred part of those proceeds to accounts with other brokerages and then transferred them back to Paine Webber. Paine Webber established a separate account for the transferred funds. The original account and the separate, transferred-funds account constitute the two Paine Webber accounts at issue in this appeal.

Between 1996 and 2001, also as part of their estate plan, wife's parents gave wife several cash gifts in the amount of the federal gift tax exclusion. Those gifts were deposited in the Paine Webber accounts. On many of the

occasions when they presented a cash gift to wife, wife's parents also presented husband with a smaller cash gift.

After a one-day trial, the trial court concluded that the Paine Webber accounts were marital assets and that wife had not rebutted the statutory presumption under ORS 107.105(1)(f) of equal contribution toward the acquisition of the assets.[1] Consequently, the trial court ordered in the dissolution judgment that the Paine Webber accounts be divided equally between the parties.

On appeal, wife asserts that the trial court erred in its disposition of the Paine Webber accounts. Wife first argues that, because they were "conditional gifts," the funds in the Paine Webber accounts are not marital assets subject to the court's distribution power. Alternatively, wife argues (1) that, if the accounts are marital assets, then she nonetheless rebutted the presumption of equal contribution and (2) that the funds were not so commingled with the joint assets of the parties that it is just and proper to require that she share them equally with husband. We address each of wife's arguments in turn.

■ First, wife argues that, although her parents purported to make gifts of stock and cash to her for tax purposes, her parents retained an interest in the gifts. Specifically, wife argues that she had an agreement with her parents to return the proceeds of the stock or the cash to them if they ever needed them.

At trial, wife's father testified that wife's parents and wife had a "mutual understanding" that wife would keep the money "available" in case her parents needed it for expenses, such as health care. Wife's father further testified that, although there was no written document expressing the parties' purported agreement, "[i]t was verbally understood, more or less." Wife's testimony was similar, and she stated that she could use the funds for her own purposes if her parents gave her permission or on their deaths. Although she does not articulate it as such, wife in effect contends that her

---

[1] ORS 107.105 (2001) was in effect when the trial court entered its judgment. That statute was amended in 2003. Or Laws 2003, ch 576, § 109. Those amendments do not affect the analysis in this case.

parents were the settlors of an *inter vivos* trust, of which she was the trustee and contingent beneficiary and her parents were the present beneficiaries.

Wife argues that husband's testimony also supports her theory. Husband testified that he understood that the funds in the Paine Webber accounts would be available to wife's parents if they needed financial help. Husband, on the other hand, argues that he was merely testifying about a moral rather than legal obligation to help wife's parents in a time of financial need. Husband testified at trial that he would have helped wife's parents financially even if they had not given wife the stock and the cash gifts. He testified that he believed that he and wife would have had a similar moral obligation to provide financial support to his own parents, who had not given similarly large gifts to the couple. Furthermore, husband testified that he had never had any conversations with wife's parents about the gifts. We agree with husband; his testimony does not support a conclusion that the transfers to wife established a trust.

In a ruling from the bench, the trial court expressly stated that it determined the Paine Webber accounts to be marital assets. Thus, the court implicitly rejected the only evidence supporting wife's position—her own testimony and that of her father. If the trial court had believed that testimony, it would have had no option but to conclude that the funds in the Paine Webber accounts were not marital assets subject to division because they were held in trust by wife for her parents. Implicitly, the court's conclusion to the contrary necessarily required it to find that the evidence regarding the conditional nature of the transfers was not credible. Although we are exercising *de novo* review, "we defer to the trial court's express and implied credibility findings." *Tomos and Tomos,* 165 Or App 82, 87, 995 P2d 576 (2000) (citing *Short and Short,* 155 Or App 5, 18, 964 P2d 1033 (1998), and *Patterson and Patterson,* 39 Or App 423, 428, 592 P2d 576, *rem'd,* 286 Or 631, 596 P2d 554 (1979)). Because the trial court did not credit the testimony supporting wife's *inter vivos* trust theory, neither do we. The transfers of stock and cash to wife were unconditional, completed gifts.

Having concluded that the funds in the Paine Webber accounts are indeed the "personal property * * * of either or both of the parties," ORS 107.105(1)(f), we turn to their proper disposition. *Kunze and Kunze*, 337 Or 122, 92 P3d 100 (2004), provides the analytical framework applicable under ORS 107.105(1)(f).[2]

■  ORS 107.105(1) provides, in part:

"Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(f)  For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

Because the funds in the Paine Webber accounts were acquired during the marriage, they are marital assets and, as such, are subject to the rebuttable presumption of equal contribution. *Kunze*, 337 Or at 133. If the presumption is not rebutted with regard to a particular asset, then, in the absence of other considerations, the appropriate "just and proper" division of that asset is an equal division. *Id.* at 134. But, "[w]hen a party has proved that a marital asset was acquired free of any contributions from the other spouse, * * * absent other considerations, it is 'just and proper' to award that marital asset separately to the party who has overcome the statutory presumption." *Id.* at 135.

■■  To rebut the presumption, a party must prove by a preponderance of the evidence that the disputed marital asset's acquisition did not result from an equal contribution

---

[2] Strictly speaking, *Kunze* applied ORS 107.105 (1997), but, as the Supreme Court noted, the subsequent amendments to ORS 107.105 "do not affect [the] analysis as to the significance of commingling in determining the 'just and proper' division of marital property under that statute." *Kunze*, 337 Or at 124 n 1.

from the other spouse. *Id.* at 134. If one spouse can establish that the marital asset was acquired by gift and that the other spouse neither contributed to its acquisition nor was the object of the donative intent, then the statutory presumption is rebutted. *Jenks and Jenks*, 294 Or 236, 241, 656 P2d 286 (1982); *see also id.* ("The presumption may be overcome * * * by a finding that property was acquired by one spouse by gift or inheritance, uninfluenced by the other spouse. In such a case, there has been no economic or other contribution by the other spouse to the acquisition of the asset.").

■ In this case, wife's father testified that he and wife's mother intended to benefit only wife with their gifts of stock and cash to her. He testified that, at times, he made separate cash gifts to husband simultaneously with the gifts to wife. Wife also testified that her parents gave husband separate cash gifts on many occasions. Wife introduced into evidence letters that accompanied the gifts in 1992, 1993, 1994, 1996, 1997, 1998, and 2001. The 1996, 1997, 1998, and 2001 letters are from wife's parents and are addressed only to wife. They all read:

> "Dear Diane:
>
> "Enclosed with this letter please find my gift to you of $9,500 cash. The gift is effective as of the date of this letter. This gift is consistent with my gifts of recent years."

The 1992, 1993, and 1994 letters are from the parents' attorney and are similar in substance to the later letters. Husband initially testified that he considered the Iseri stock gifts to be gifts solely to wife, as opposed to gifts to both of them. He later testified that he believed the cash gifts to be gifts to both of them and changed his position as to the stock gifts as well.

The evidence in the record, notwithstanding husband's fluctuating position on whether he was an object of the donative intent of wife's parents, is sufficient to overcome the presumption that husband contributed equally to the initial acquisition of the funds in the Paine Webber accounts. Nonetheless, the trial court concluded that wife had not rebutted the presumption. In its ruling from the bench, the court stated:

"I don't believe that the presumption of marital contribution has been rebutted in this case. * * * [B]asically, what we have in this case, and I think if you look at the cases which have kept this out, you end up, really, with two gifts. You end up with a gift from the parents to the respondent in this case, who then gifts her interest in that to the petitioner by putting his name on those accounts."

From that statement, we glean that the trial court believed that the Paine Webber accounts had become so commingled with the parties' other assets, particularly because they were titled jointly, that wife could no longer rebut the presumption, in essence considering the commingling of assets to be a factor in the analysis of whether the statutory presumption has been rebutted. In the past, this court has made the same error. *See, e.g., Kunze and Kunze*, 181 Or App 606, 618, 47 P3d 489 (2002), *aff'd as modified*, 337 Or 122, 92 P3d 100 (2004); *Van Horn and Van Horn*, 185 Or App 88, 94-95, 57 P3d 921 (2002), *rev den*, 335 Or 267 (2003); *Butler and Butler*, 160 Or App 314, 320-21, 981 P2d 389 (1999); *Rykert and Rykert*, 146 Or App 537, 542-43, 934 P2d 519 (1997). Thus, the trial court's analysis is understandable. However, *Kunze*, issued after the trial court's decision in this case, makes clear that whether assets have been commingled with the marital estate ordinarily is not a consideration in the analysis of whether the statutory presumption of equal contribution has been rebutted. 337 Or at 142 n 12. Rather, commingling is a factor in analyzing whether the statutory presumption has been rebutted only when an "act of commingling may preclude the court from identifying that spouse's separate contribution with sufficient reliability to rebut the statutory presumption that both spouses have contributed equally to the disputed asset." *Id*. at 138. Otherwise, commingling is considered at the "just and proper" division stage of the analysis. *Id*. at 142 n 12. Here, the preponderance of the evidence shows that wife was the sole object of her parent's donative intent and that husband did not contribute to the acquisition of the gifts. Therefore, we hold that the trial court's legal conclusion that wife had not rebutted the statutory presumption was error.

■     Once the presumption has been rebutted, *Kunze* instructs us to determine a "just and proper" division of all

marital property. *Id*. at 145. As in *Kunze*, "[b]ecause she has established that husband did not contribute to their acquisition, wife presumptively is entitled to receive [the funds in the Paine Webber accounts] unless other considerations require a different result." *Id*. *Kunze* identified "the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling" as one such equitable consideration. *Id*. at 136 (citing *Jenks*, 294 Or at 242-43). Surveying our cases, the Supreme Court highlighted three of the factors that we have considered to discern whether a spouse intended for a particular asset to remain separate or intended the asset to become a joint asset of the marital partnership:

"(1) whether the disputed property was jointly or separately held; (2) whether the parties shared control over the disputed property; and (3) the degree of reliance upon the disputed property as a joint asset."

*Kunze*, 337 Or at 141.

The Supreme Court's ratification of those three factors neither establishes a three-step commingling analysis nor sets forth an exclusive list of considerations. Instead, it identifies three out of many possible indicia of "whether a spouse demonstrated an intent to retain that spouse's separately acquired asset as separate property or whether, instead, that spouse intended for that property to become the joint property of the marital estate." *Id*. at 142. The various factors are alternative methods by which assets can become commingled. For example, commingling can occur through joint titling, through shared control, or through reliance on a separately titled property as a joint asset. *See, e.g., Albers and Albers*, 174 Or App 243, 249, 23 P3d 430 (2001) (holding that inherited funds deposited in joint account were commingled); *Rykert*, 146 Or App at 544 (holding that funds solely in wife's name were commingled because husband had control over the funds); *Becker and Becker*, 122 Or App 567, 571, 858 P2d 480 (1993), *rev den*, 318 Or 60 (1994) (holding that trust interests solely in wife's name and control were commingled because husband relied on their existence in

retirement planning). But no matter how commingling is established, the court explained

> "that acts of commingling do not mandate in all cases the inclusion of separately acquired property in the property division. Instead, the court must evaluate the *extent* to which a spouse has integrated a separately acquired asset into the joint finances of the marital partnership and also evaluate whether any inequity would result from the award of that asset to that spouse as separate property."

*Kunze*, 337 Or at 142 (emphasis added). That is, commingling itself is not enough; equity must demand that the disputed asset be divided between the spouses.

Because it is an equitable consideration, commingling is not an all or nothing proposition. Instead, commingling falls along a spectrum. In some cases, a particular asset may be commingled to such an extent that it would be inequitable to divide it in any manner other than equally. In other cases, an asset may be less commingled and therefore subject to a split into unequal shares. *See, e.g., Taylor and Taylor*, 121 Or App 635, 640, 856 P2d 325, *adh'd to as modified on recons*, 124 Or App 581, 863 P2d 473 (1993), *rev den*, 319 Or 626 (1994) (awarding wife one third of husband's inheritance because it was commingled through wife's reliance on it as a source of retirement income).

Here, there is no evidence in the record that husband made any particular financial decisions in reliance on the existence of the Paine Webber accounts. Nor is there any evidence that he ever exercised any control over the accounts despite being their joint owner. Nonetheless, it is undisputed that title to the disputed marital assets had been held jointly since they were deposited in the Paine Webber accounts in 1995. However, it appears from *Kunze* that joint title, in and of itself, may not be enough to demonstrate that wife intended her parents' gifts to become joint property of the marital estate. In *Kunze*, one of the properties at issue—the Germantown Road property—had been owned by the wife at the time she married the husband. Four years before the dissolution, in order to obtain a loan against the property, the wife deeded a joint interest in the Germantown Road property to the husband. The Supreme Court concluded that that

action alone did not demonstrate that the wife intended to commingle the Germantown Road property with the financial affairs of the couple. *Kunze*, 337 Or at 146. Without elaborating, the court stated that the wife introduced evidence "that showed that she had intended to retain her separately acquired equity in that property as her separate property." *Id.* at 146-47. The court likely relied on the fact that the wife had maintained the Germantown Road property as her separate asset for 15 years of the 19-year marriage and had added husband's name on the title only to secure financing for the husband's business venture.

Here, in contrast, wife deposited the cash proceeds of the stock sale in a joint account as soon as the stock was liquidated in 1995. Thereafter, each time she received a cash gift from her parents, she deposited that gift into a joint account. Wife testified that it was her practice to title all of their assets jointly and that that practice was "cultural." She explained that she did so "[b]ecause of our upbringing, and because I thought we would be together forever * * *." Wife's words echo the Supreme Court's sentiment in *Jenks*: "[B]y the nature of the marital relationship, couples ordinarily pledge their troth for better or worse until death parts them and their financial affairs are conducted accordingly." 294 Or at 242. The Supreme Court explained in *Kunze* that the legal import of its musing about marriage in *Jenks* is that, "when a spouse has treated a separately acquired asset as a joint asset of the marital partnership, then the parties' shared financial decisions during the marriage have been made in reliance on that asset without consideration of whether it was separately or jointly acquired." 337 Or at 140. We conclude that wife's joint titling of the Paine Webber accounts from their inception demonstrates her intent to make them joint assets of the marital estate.

As previously discussed, however, that conclusion does not automatically lead to the result that the trial court reached, *i.e.*, an equal division of the Paine Webber accounts between the parties. The facts of this case lead us to conclude that, although wife demonstrated an intent to make the Paine Webber accounts joint assets of the marital estate, the commingling of the accounts was not so complete that an

equal division is appropriate. Wife largely preserved the separate existence of the gift funds in the Paine Webber accounts. The only significant exception to that preservation was that she deposited approximately $2,000 from her paychecks in the Paine Webber accounts in order to save toward the purchase of a car, which she ultimately bought with funds from the Paine Webber accounts and titled jointly in both her and husband's names.[3] Although that transaction bolsters our conclusion that the Paine Webber accounts were sufficiently commingled with the marital estate to the point that it would be inequitable to allow wife to retain the accounts in their entirety, the *de minimis* nature of the transaction, in light of the fact that the vast majority of the funds was kept separate and intact from the inception of the account, does not lead to the conclusion that husband should receive an equal share.

Furthermore, although we conclude that wife is under no legal obligation to return the funds in the Paine Webber accounts to her parents if they need them, we are not unsympathetic to the moral obligation that she may feel to do so. Her testimony indicates that that was the reason she maintained the accounts separately. Notwithstanding husband's suggestion that he too felt a moral obligation towards wife's parents, we recognize the reality that, following this dissolution, wife's share of the Paine Webber accounts likely will be the primary, if not the sole, source of emergency funds for her parents. Thus, we hold that the trial court's equal division of the Paine Webber accounts was not just and proper in all the circumstances. We conclude, for the reasons stated above, that a just and proper division of those accounts is for wife to receive 75 percent of the funds in those accounts and for husband to receive 25 percent of the funds.

_____

[3] Wife withdrew approximately $25,000, or just over 5 percent, of the gift funds in the Paine Webber accounts to purchase the vehicle. We also note that in 1997 wife used funds from the Paine Webber accounts to remedy a cash flow problem: The balance was due on her business credit card before her employer reimbursed her for her expenses. Wife deposited the reimbursement from her employer in the Paine Webber account to replace the funds she had withdrawn. Wife also withdrew $4,415 to pay some of her attorney fees related to the dissolution proceeding. Neither the 1997 transaction nor the attorney fee transaction affects the result in this case.

Judgment modified to award wife 75 percent and husband 25 percent of funds in disputed Paine Webber accounts; otherwise affirmed.

**BREWER, C. J.,** concurring.

The majority has done a faithful job in this case of applying the template for property division imposed by the Supreme Court in *Kunze and Kunze*, 337 Or 122, 92 P3d 100 (2004). I write separately to express my views regarding two issues: (1) whether wife's transfer of her separately held stock proceeds and other funds into the parties' jointly owned Paine Webber accounts resulted in the acquisition of property during the marriage to which the rebuttable presumption of equal contribution set out in ORS 107.105(1)(f) applies, and (2) if so, whether wife rebutted the presumption that husband contributed equally to those acquisitions.

In *Kunze,* the Supreme Court properly reminded bench and bar that "the legislative intent underlying ORS 107.105(1)(f) is the formulation of a property division at dissolution that is just and proper in all the circumstances." 337 Or at 132 (internal quotation marks omitted). The court explained that, to achieve its directive, "the statute empowers the court to distribute any real or personal property that either or both of the parties hold at the time of dissolution[.]" *Id.* at 133. Under ORS 107.105(1)(f), if a party establishes that the asset at issue is a marital asset—that the asset was acquired during the marriage—"then the court must apply the rebuttable presumption of equal contribution * * *." *Kunze*, 337 Or at 134. The legislative intent behind the statutory presumption recognizes that, "[in the absence of] evidence to the contrary, each spouse's efforts during a marriage equally contribute to, and are made for the benefit of, the marital estate, regardless of the nature of those efforts or how the property is held." *Id.* at 134. The initial focus of my concern is the court's implicit assumption that the concept of commingling is unrelated to—and, indeed, only comes into play after—the determination whether the asset in question was acquired during the marriage and, therefore, is subject to the rebuttable presumption of equal contribution. *Id.* at 137-43 (holding that commingling is pertinent to the determinations whether the statutory presumption has been

rebutted and what is a just and proper division of property). As explained below, that assumption drives the division of the parties' joint brokerage accounts in this case.

The rebuttable presumption of equal contribution is a creature of statute. ORS 107.105(1)(f) (2001) provides that "[t]here is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held." In this case, as in *Kunze*, the beginning point should be the task of identifying the pertinent acquisition of property during the marriage. In making that determination, we must begin with the text of the statute in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We are admonished to give words of common usage their "plain, natural, and ordinary meaning." *Id.* at 611. "As a part of context, [a] court considers, among other things, other provisions of the same statute, other related statutes, prior versions of the statute, and [the Supreme Court's] decisions interpreting the statute." *Jones v. General Motors Corp.*, 325 Or 404, 411, 939 P2d 608 (1997).

The rebuttable presumption of equal contribution was added to the statute, then numbered ORS 107.105(1)(e), in 1977. Or Laws 1977, ch 847. The Supreme Court first considered the meaning of the phrase "acquisition of property during the marriage" in *Engle and Engle*, 293 Or 207, 214-15, 646 P2d 20 (1982). The court noted that the term "marital assets" was not defined in ORS 107.105(1)(e) (1977) and that the statute referred to property received during a marriage in two ways, namely, as "the acquisition of marital assets" and as "the acquisition of property during the marriage." The court explained:

> "Although there may be some question whether property received during the marriage by a spouse by way of gift or inheritance is intended to be included with either phrase (a question which we need not and do not decide in this case), there is no doubt that both phrases intended to include most other property acquired by one or both spouses during the marriage. The amendment recognized the fact that nonearning spouses who maintain the home, do the cooking and cleaning and raise the children, also contribute to the acquisition of property in a tangible, substantial way. The

result was the creation of the rebuttable presumption of an equal contribution. Thus, when property is acquired with monies earned by a working spouse, whether title is taken in the husband's name, the wife's name, or in both names, the acquisition of the property would be treated, at least presumptively, as having resulted from the equal efforts of the spouses."

*Engle*, 293 Or at 214 (footnote omitted).

The court next considered the meaning of the phrase "acquisition of property during the marriage" in *Pierson and Pierson*, 294 Or 117, 121, 653 P2d 1258 (1982). In that case, the wife received an inheritance after the parties separated but before an action to dissolve their marriage was filed. The husband argued that the inheritance should be considered a marital asset subject to the statutory presumption. The court agreed, reasoning that "the reference to 'acquisition of property during the marriage' indicates that it includes neither assets brought into the marriage by either spouse nor assets acquired by them after dissolution." *Id.*

The court most recently considered the meaning of the phrase "acquisition of property during the marriage" in *Massee and Massee*, 328 Or 195, 206-07, 970 P2d 1203 (1999). Following the *PGE* template, the court observed that the dictionary definition of " 'acquisition' " is " 'the act or action of acquiring.' " *Id.* at 206 (quoting *Webster's Third New Int'l Dictionary* 19 (unabridged ed 1993)). Relying on that definition, the court concluded that the appreciation during the marriage of assets brought to the marriage and separately held by the husband constituted property "acquired" during the marriage and, thus, was a marital asset to which the presumption applied. *Massee*, 328 Or at 206.

Neither the legislative history of the 1977 amendment nor anything that the court said in *Engle* or *Pierson* speaks meaningfully to the problem at hand. However, *Massee* may be instructive. By concluding that the mere passive appreciation in value of property brought into the marriage and separately held by one spouse constitutes property acquired during the marriage, the court indicated that the phrase "acquisition of property during the marriage" is of broad applicability. It therefore is difficult to conceive how a

deliberate transfer of an interest in property from one spouse to another, or from one spouse to both, would not also be regarded as property acquired during the marriage.[1] Nevertheless, despite the expansiveness of the holding in *Massee*, the Supreme Court in *Kunze* implicitly concluded that an interspousal transfer of property does not result in an acquisition of property during the marriage for purposes of ORS 107.105(1)(f) (2001).

The statute, however, is not so limited. By its terms, the statutory presumption applies to the act of acquiring property during the marriage, regardless of whether the asset is jointly or separately held. Thus, the scope of the presumption is unrestricted in two salient ways: (1) it can apply to successive acquisitions of the same property during the marriage, and (2) it is of no consequence whether the form of acquisition is joint or separate.

The majority correctly applies the presumption to wife's initial acquisitions of stock and cash by gift from her parents and concludes, as I would, that wife rebutted the presumption that husband equally contributed to those acquisitions. However, because it is constrained by *Kunze*, the majority does not address the second phase of acquisitions that occurred when wife deposited the stock proceeds and other funds into the parties' joint accounts during the marriage. That omission, although compelled by precedent that binds this court, is inconsistent with the statutory text. It also unnecessarily complicates the role that commingling plays in the division of marital property.

---

[1] Admittedly, an abstract way to reconcile *Massee* with *Kunze* would hold that the statutory presumption applies only to the initial acquisition of property, not to a successive transfer between spouses. In fact, that is the necessary, but unstated, implication of the court's holding in *Kunze*. *See Kunze*, 337 Or at 144 (stating that the statutory presumption was inapplicable to "premarital equity" in property that wife had conveyed to husband as a co-owner during the marriage). Viewed accordingly, once the appreciation of a premarital asset during the marriage is understood to constitute discrete property, its initial "acquisition" could be distinguished from the successive acquisition by one spouse of an interest in the other spouse's "premarital equity" in property. As explained below, though, that distinction lacks support in the text and context of the statute; it ignores the fact that the transfer of an undivided joint ownership interest in property results in the acquisition of an interest in the entire property, including the premarital equity of the transferor spouse.

In *Kunze*, the Supreme Court treated certain commingled property as a distinct form of property. *See Kunze*, 337 Or at 139 ("[A]cts of commingling *may* operate to convert a separately acquired asset into a joint asset of the marital partnership." (Emphasis added.)). In recognizing that distinct form, the court subscribed to a complex calculus for determining the extent to which an asset is to be traced to its former ownership and, thus, provisionally included in or excluded from the property division. *Id.* at 142. That calculus could be useful in two other contexts: (1) as discussed below, in determining from a communal vantage point whether the presumption of equal contribution has been rebutted, and (2) in determining, at the final stage of analysis, whether equitable considerations compel the division of property that otherwise would be excluded from consideration. In fact, that calculus may provide the sole practical means for addressing the effect of commingling with respect to property, such as furnishings, artwork and the like, whose acquisition frequently is undocumented.

However, there is a congruence between commingling and the formal interspousal transfer of property during a marriage that the court overlooked in *Kunze*. The conveyance of an interest in real property has a well-defined legal effect. *See, e.g.*, ORS 93.850(2)(a) (a warranty deed "shall convey the entire interest in the described property at the date of the deed which the deed purports to convey"). Likewise, the joint ownership of other types of property, such as bank and investment accounts, as well as vehicles, is routinely established by written agreement and title, respectively. *See, e.g.*, ORS 708A.485 ("Any multiple-party account may be paid, on request, to any one or more of the parties. A financial institution shall not be required to inquire as to the source of funds received for deposit to a multiple-party account, or to inquire as to the proposed application of any sum withdrawn from an account, for purposes of establishing net contributions."); ORS 803.010 (describing "prima facie" ownership effect of certificate of title to motor vehicle).

There is an important reason for this state of affairs. In the everyday world, including married life, people understand that the formal transfer of an ownership interest in property is a legally significant event. That is why it makes

perfect sense that the legislature would treat as legally significant the formal interspousal transfer and acquisition of property during the marriage by attaching a rebuttable presumption of equal contribution to it. Because the statutory text clearly evinces that legislative intent, there is no reason to regard formally commingled property as a distinct form of joint property necessitating separate treatment in determining whether the property is a marital asset and its divisibility. The business of property division is complicated enough without artificially restricting the scope of property to which a simplifying presumption applies. And simplification is a function that the statutory presumption ordinarily serves quite well. It helps avoid the ad hoc resolution of dissolution disputes by bringing a measure of consistency and predictability to the application of the law in an area where fact-matching is inherently treacherous.

In short, because the stock proceeds and other funds deposited into the Paine Webber joint accounts were acquired by the parties during the marriage, they are marital assets to which the statutory presumption applies.

With the foregoing in mind, I would separately consider whether wife rebutted the presumption that husband contributed equally to the acquisitions that occurred when the stock proceeds and other funds given to wife by her parents were deposited into the Paine Webber joint accounts in 1995 and thereafter. With little enthusiasm, I conclude that wife rebutted the presumption. The evidence showed that wife placed those funds in the Paine Webber accounts for "cultural reasons" and because of her commitment to the parties' shared future. There was no evidence that husband made any particular contributions to the deposit of the stock proceeds and to her funds into the joint accounts.

Based on longstanding principles of property division, that evidentiary vacuum would not be conclusive where, as here (1) the parties' marriage was one of lengthy duration, (2) there was no agreement or common understanding between the parties that the joint accounts were to be wife's separate property, (3) the parties both valued hard work and saved for a shared future, and (4) as a consequence, the parties thoroughly commingled their assets and financial affairs.

*See Stice and Stice*, 308 Or 316, 328-29, 779 P2d 1020 (1989) (discussing similar factors in determining whether presumption was rebutted). Under such circumstances, it would be reasonable to conclude that wife did not rebut the presumption that husband equally contributed to the questioned acquisitions. However, in *Massee*, the Supreme Court said:

> "In deciding whether the presumption of equal contribution is rebutted, the court first must determine the magnitude of each spouse's overall contribution to the acquisition of marital assets from evidence in the record. If one spouse is a homemaker, that determination necessarily will include an assessment of the homemaker spouse's contribution to the enterprise of homemaking. A homemaker spouse's overall contribution may consist of a combination of domestic contributions and economic or other nondomestic contributions.
>
> "Once the court has determined each spouse's overall contribution to the acquisition of marital assets, the court compares the respective contributions of the spouses. The ultimate question is whether the spouse seeking to rebut the presumption of equal contribution has proved, by a preponderance of the evidence, that the other spouse did not contribute equally to the acquisition of marital assets. If the court determines that the presumption of equal contribution is rebutted, the presumption drops from the case and the court divides the property according to the magnitude of each spouse's contribution to the acquisition of marital assets. In other words, the court distributes the marital assets without regard to any presumption, but in a manner that is just and proper in all the circumstances, including the proven contributions of the parties to the acquisition of marital assets."

*Massee*, 328 Or at 205 (footnotes omitted).

The quoted passage can be understood to suggest that the trial court should admit evidence about the details of each party's activities throughout the marriage, should attempt to assign values to those activities, and then should attempt to correlate those values to the parties' marital assets. At first blush, that approach appears to be difficult to reconcile with the court's earlier decision in *Stice*. In that case, the wife argued that she should be able to rebut the

statutory presumption by showing that throughout the marriage she had been the "saver and purchaser," that the acquisition of the disputed asset had been the result of her "industry and frugality," and that her husband had been a self-indulgent "spender" who "used most of his income above that needed for the monthly expenses for his enjoyment and hobbies." *Id.* at 324. The court rejected her argument, stating, "In a long-term marriage in which the parties' properties were acquired during the marriage, the parties should separate on as equal a basis as possible." *Id.* at 327.

In *Kunze*, however, the court appeared to limit the reach of *Stice*:

"We note that, in *Stice*, 308 Or 316, this court considered commingling for a different reason under the statutory presumption of equal contribution. In concluding that the wife had failed to rebut the statutory presumption in that case, the court found it persuasive that the parties had commingled their financial affairs and that the wife had not shown that the husband considered the disputed assets to be the wife's separate property. *Id.* at 328-29. Specifically, the court observed that that evidence strengthened the presumption that the husband had made an equal contribution by showing that the husband had enabled the wife to devote her income to the purchase of the disputed assets. *Id.* The reasoning in *Stice*, however, is inapposite to this case, because husband here does not contend that his efforts during the marriage contributed either directly or indirectly to the disputed marital property; rather, as discussed below, he argues only that he is entitled to a part of those assets because the wife's acts of commingling converted those assets into joint assets of the marital partnership."

*Kunze,* 337 Or at 139 n 10. The court's apparent retrenchment in *Kunze* is not free from controversy. As Professor Leslie Harris has observed:

"Avoiding an examination of whether one spouse's efforts were more valuable than the other's, except in extreme cases, furthers several policies that are inherent in the property division and other statutes. First, such an inquiry clashes with the abolition of fault as a consideration in economic decisions at divorce; the line between marital fault and less-than-wholehearted contributions would be difficult to draw, at best. Second, inquiring in detail about

who made greater contributions to the family's well-being during the marriage may undermine the parties' willingness to set aside their own self-interest during the marriage in favor of the common good of the family. Third, as the Supreme Court has repeatedly said, [ORS] 107.105(1)(f) must always be construed to recognize the financial importance of both spouses' work and to ensure that homemakers and other spouses who forgo career development to care for the parties' home and children share in the economic fruits of the marriage. Requiring trial courts to evaluate the relative worth of the spouses' labors during the marriage could significantly undermine this policy."

Leslie Joan Harris, *Tracing, Spousal Gifts, and Rebuttable Presumptions: Puzzles of Oregon Property Distribution Law*, 83 Or L Rev ＿＿ , ＿＿ (forthcoming 2005) (footnotes omitted). Professor Harris's views notwithstanding, *Kunze* suggests that, except in cases involving a homemaker spouse, the Supreme Court probably will require a particularized assessment of a spouse's contribution to the acquisition of a disputed asset—even a commingled asset—in determining whether the presumption has been rebutted. Here, the record is bereft of evidence that husband contributed, directly or indirectly, to the joint acquisition of an interest in the disputed funds. Accordingly, wife rebutted the presumption that husband equally contributed to that acquisition.

Although it is tempting to follow the majority's analysis as it proceeds through the additional steps prescribed by *Kunze*, the exercise would not contribute to a better understanding of the principles at play. Suffice it to say that the majority appears to come to a conclusion that *Kunze* countenances. Because binding precedent so demands, I respectfully concur.