248 P.3d 420 (2010)
240 Or. App. 1
In the Matter of the MARRIAGE OF Cheryl Christine COOK, Petitioner-Respondent, and
Robert Dale Cook, Respondent-Appellant.
DR06120843; A137259.
Court of Appeals of Oregon.
Argued and Submitted February 3, 2010.
Decided December 29, 2010.
*421 Mark Johnson, Portland, argued the cause for appellant. With him on the briefs was Johnson & Lechman-Su PC.
Peter Bunch, Portland, argued the cause for respondent. With him on the brief was Zimmer & Bunch LLC.
Before SCHUMAN, Presiding Judge, and BREWER, Chief Judge, and ORTEGA, Judge.[*]
BREWER, C.J.
Husband appeals from a judgment of unlimited separation, assigning error to the property division and spousal support awards that the trial court made. On de novo review, ORS 19.415(3) (2007), we modify the property division and otherwise affirm.
The parties began living together in 1993, were married in 1995, and separated in 2005. Wife filed a petition for unlimited separation in August 2006, at which time she also obtained and served on husband a restraining order that enjoined the parties from encumbering *422 or disposing of their assets during the pendency of the action. The trial court entered the judgment of unlimited separation from which husband appealed in 2007.
Husband was 69 years old when the judgment was entered, and wife was 60. The parties have no joint children. Husband is a surgeon, who earned more than $300,000 per year, working 30 hours per week. Husband was in good health at the time of trial and had no plans to retire. Wife, who has a high school education, had previous work experience as an athletic club assistant; during the marriage, she worked as husband's office assistant, earning about $21,000 per year. Wife also performed a homemaker role throughout the marriage. Wife brought about $50,000 to the relationship; she used $30,000 to help husband with a business venture, and the parties used $20,000 for living expenses.
At the time of trial, the parties owned a home worth approximately $1,500,000 that was located on 7.3 acres in a gated community. The parties regularly went on vacations, held expensive parties in their home, and generally enjoyed a lifestyle without material wants. Husband acquired the residence with his former spouse in 1969. Husband's marriage to his former spouse was dissolved in 1994. The dissolution judgment provided that those parties would own the property as tenants in common and that they would forthwith list the property for sale and equally divide any net sale proceeds. After husband and wife were married, to settle litigation with his former spouse, husband purchased his former spouse's interest in the property for $390,000. Husband used his retirement funds and the proceeds of a refinanced loan on the property to fund the buyout.
Husband jointly conveyed the property to himself and wife in 1998. The parties refinanced the property twice during the marriage, the first time to reduce the mortgage interest rate and the second time to obtain funds to remodel the property. After they separated, the parties refinanced the property a third time to pay their credit card debts and automobile loans. The parties learned in 2004 that they had a potential Measure 37 (now Measure 49) claim that might permit the creation of three additional buildable parcels out of the property. Wife took the lead in overseeing the Measure 37 claim. Based on her work with realtors and developers, wife testifiedand husband agreed in his list of assets and liabilities and proposed distributionthat the gross value of a successful claim would be $2,070,000. The parties also stipulated that, excluding the value of the Measure 37 claim, the residence and real property had a gross value of $1,505,000, that the mortgage balance was $1,128,750, and that their net equity in the property was $376,250.
The trial court ordered the sale of the property, including any further created lots, and the equal division of the net proceeds of sale after the Measure 37 claim is finally adjudicated. In deciding that husband's premarital interest in the property should be equally divided between the parties, the trial court found that "[husband] did not state that he had any intention to keep it as separate property."
Husband owned retirement accounts at the time of the marriage, but the premarital value of those accounts was both hotly contested and unclear at the time of trial. In particular, the trial court found:
"[Husband] produced very little in discovery to document his retirement assets. The day before trial he produced a document that represented that he had $2.7 million in his retirement accounts at the time of his marriage, but the documents were generated with his corporation as the producer, with no headings, no bank, no management company, no Fund, no way to verify these were not printed on his home or office computer, and not produced in a timely manner to allow verification. Since these were employee reports generated under his control (at best), I cannot rely on them. If they had been produced in a timely manner to allow for the rigors of examination by opposing counsel I might look differently upon them. Since they were not, I find that they are unreliable and that husband's entire retirement funds are marital property subject to `just and proper' distribution.

*423 "If husband is able to use all of loss carryovers on the [M]easure 37 property then I find it to be just and proper to award all of what is left in these accounts to husband. If the carryovers are not useable then these accounts will be divided equally (by [qualified domestic relations order] if necessary with each paying one-half of the cost.)"
What is clear is that the value of the retirement accounts steadily shrank during the marriage, as husband regularly invaded it for various purposes, including paying obligations to his former spouse, supporting the parties' lifestyle and, after their separation, acquiring a new residence (the Johnson Road property) for himself and his new partner. The parties agreed that the total remaining value of those accounts at the time of trial was $135,893.
While the separation action was pending, husband used $46,500 in retirement funds to purchase and improve the Johnson Road property. With respect to that property, the trial court found:
"Husband bought this property in violation of the restraining order in this case. He bought it with withdrawals from his retirement and from a new line of credit he set up, again in violation of the restraining order. Since I find below that the retirement accounts are marital property, this asset is in and will be considered under the `just and proper' umbrella. Since this property was bought for his new partner and since the origin of the assets liquidated to buy it were his originally and since there is very little equity in this beyond the $20,000 he paid down and the $26,500 he paid for improvements I award this to him at a value of $46,500."
The trial court also included the value of husband's incorporated medical practice in the property division, which wife's expert testified was worth $334,313. Because husband was awarded his medical practice and the Johnson Road property, in order to effect an equal division of the parties' property, the court awarded wife an equalizing judgment in the amount of $219,788, payable on the sale of the residence or any buildable lots resulting from the Measure 37 claim.
Finally, the court awarded wife indefinite maintenance spousal support in the amount of $8,000 per month, leaving wife with $70,479 in net spendable income per year and husband with $187,494 in net spendable annual income.
On appeal, husband challenges the property division, arguing that he should have received outright awards of his medical practice, retirement funds, and the Johnson Road property. With respect to the residence property, husband argues that wife should receive no more than one-half of the value of any new parcels that might result from the Measure 37 claim process, should it prove successful. Husband asserts that, with respect to the retirement funds and Johnson Road property equity, the trial court abused its discretion, in essence, by penalizing husband for perceived discovery violations even though wife failed to file a motion to compel such discovery, nor did she seek sanctions for discovery violations or subpoena the underlying records showing the value of the funds.
We first address husband's challenge to the disposition of the residence property. Under ORS 107.105(1)(f), the property that is subject to the dispositional authority of the court in a dissolution or separation case consists of two classes.[1] First, there is "the real or personal property, or both, of either or both of the parties," ORS 107.105(1)(f), consisting of any property that the parties possess at the time of the dissolution, regardless of when the property was first acquired. Pierson and Pierson, 294 Or. 117, 121-22, *424 653 P.2d 1258 (1982). That property is commonly called "marital property." Massee and Massee, 328 Or. 195, 201 n. 2, 970 P.2d 1203 (1999). The distribution of marital property in a dissolution is governed by a statutory standard of what is "just and proper in all the circumstances." ORS 107.105(1)(f); see also Kunze and Kunze, 337 Or. 122, 134, 92 P.3d 100 (2004).
Second, there is a subset of that property, called "marital assets," which refers to the marital property that was acquired by either party, or both, during the marriage. Pierson, 294 Or. at 121, 653 P.2d 1258. A presumption of equal contribution applies to marital assets. ORS 107.105(1)(f). If the presumption has not been rebutted, the property ordinarily will be divided equally between the parties. Kunze, 337 Or. at 134, 92 P.3d 100. If the presumption has been rebutted, then the property must be divided in a manner that is just and proper under all the circumstances. Id.
Husband correctly observes that the fact that he added wife's name to the title of the property after the marriage did not convert his premarital interest in the property into a marital asset to which the presumption of equal contribution applies. Id. at 146, 92 P.3d 100; Tsukamaki and Tsukamaki, 199 Or.App. 577, 584-85, 112 P.3d 416 (2005). Nevertheless, the issue whether husband's acts of commingling the residence into the parties' joint affairs through the multiple refinances of the property, the remodel, and wife's activities with respect to the Measure 37 claim, comes into play in the determination of what is a just and proper division of the property. Id.
The difficulty with the application of those principles in this case is that, as wife observes, there is no evidence in the record as to either the gross or net value of the property at the time of the marriage. There was evidence that, after the parties' marriage, husband used the proceeds of a refinance of the property and funds from his retirement accounts to settle various claims made by his former spouse for spousal support, to disentangle their interests in a joint business venture, and to acquire his former spouse's one-half interest in the property, for a total payment of $390,000. However, there was no evidence concerning what portion of that payment was for the purchase of the former spouse's interest in the property, as opposed to the resolution of her other claims. Under the circumstances, it is virtually impossible to ascertain and trace either the value of husband's premarital interest in the property or the actual purchase price of the one-half interest that husband acquired from his former spouse during the marriage. Moreover, wife contributed substantially to the upkeep and development of the property, and she served as a homemaker throughout the marriage. Thus, irrespective of whether husband rebutted the presumption that wife equally contributed to the one-half interest in the property that husband acquired during the marriage, we will not disturb the trial court's determination that it was just and proper to equally divide the property between the parties.
We turn next to husband's challenges to the division of his retirement accounts and the Johnson Road property. As discussed, the value of the retirement accounts steadily shrank during the marriage, as husband regularly invaded it for various purposes, including paying obligations to his former spouse, supporting the parties' lifestyle and, after their separation, acquiring the Johnson Road property for himself and his new partner. The parties agreed that the total value of those accounts at the time of trial was $135,893.
As husband sees things, the trial court awarded wife an equal interest in both the retirement accounts and the Johnson road property as a sanction for perceived discovery violations. According to husband, he did not violate any discovery orders and, thus, the trial court abused its discretion in equally dividing those assets. See, e.g., Stronach v. Ellingsen, 108 Or.App. 37, 40, 814 P.2d 175, rev. den., 312 Or. 151, 817 P.2d 758 (1991) (holding that, generally speaking, discovery rulings are reviewed for abuse of discretion). Wife differs in her understanding of the nature of the challenged award. In her view, the trial court divided the subject assets in accordance with its authority to make a "just *425 and proper" division of property under ORS 107.105(1)(f). Although such an award also is reviewed for abuse of discretion, see Kunze, 337 Or. at 136, 92 P.3d 100, our exercise of review depends on the nature of the underlying decision that the court made. Accordingly, we address that issue first.
Several months before trial, wife served a request for production of documents on husband in which she sought his retirement account statements, including distribution records pertaining to those accounts, for the duration of the parties' marriage. Husband did not produce any documents in response to the request until the day before trial. Although she had not previously filed a motion to compel production of the documents, based on their tardy production, wife filed a motion in limine to exclude them from evidence. The trial court denied the motion in limine, but, as noted in its findings, the court was skeptical of the accuracy of the information that husband produced.
We conclude that the trial court did not divide the subject assets based on a perceived discovery violation; rather, the court discounted the evidence that husband produced, because of the format in which it was produced and the timing of its production. The court's observations in that regard constituted a credibility finding to which, on de novo review, we defer. Tomos and Tomos, 165 Or.App. 82, 87, 995 P.2d 576 (2000). That credibility determination also was supported by the court's finding that husband was in willful contempt of the restraining order by withdrawing funds from the retirement account and expending and borrowing funds to acquire the Johnson Road property. Because there was no evidence that the retirement accounts appreciated in value during the marriage or that husband used marital assets to purchase the Johnson Road property, the presumption of equal contribution does not apply to those assets. The issue, then, is whether, under the circumstances, the equal division of the remaining balances of the retirement accounts and the equity in the Johnson Road property was just and proper.
A factor for consideration in that determination is the contingency that the trial court imposed based on husband's income tax position. The evidence showed that husband had $569,975 in long-term capital loss carry forwards based on past transactions. The evidence showed that, if the parties realize capital gains from the sale of the residence or the Measure 37 claim, the capital loss carry forward will reduce husband's capital gains on those transactions on a dollar-for-dollar basis. According to wife, that uncontroverted evidence prompted the trial court to "[provide] wife with a portion of husband's remaining retirement accounts only if the Measure 37 claim fails, or if the development is successful and [h]usband's tax loss carry forwards result in a financial windfall to [h]usband."
In fact, the judgment in this case includes an extensive and sophisticated provision addressing the use of husband's tax loss carry forwards with respect to the development and sale of the residence and any buildable lots arising from a successful Measure 37 claim, with the "intent that these losses be applied as to the capital gains arising on husband's portion of the sale proceeds of the residence and buildable lots so that, after tax, each party will receive the same amount of money from each sale, net of taxes." Relatedly, the provision of the judgment allocating husband's retirement accounts addressed three contingencies: (1) If husband is able to utilize all of his tax loss carry forwards from the sale of the residence and any buildable lots, he will retain "one hundred percent ownership in all of his retirement accounts;" (2) if husband is unable to utilize any of the tax loss carry forwards, wife will receive 50 percent of the retirement account value; and (3) if husband is able to use some, but not all, of his tax loss carry forwards, "he shall receive credit for the resulting tax benefit received by Wife. Specifically, any interest in Husband's retirement accounts * * * allocated to Wife shall be reduced by the amount of tax loss carry forward benefit Wife receives from Husband."
In our view, the trial court's allocation of husband's retirement accounts is not just and proper in all the circumstances. As discussed, the provision dividing the marital residence and any buildable lots arising from *426 the Measure 37 claim has a built-in equalizing provision that ensures the equal after-tax division of those interests. Moreover, wife has suggested no reason why husband would not have an incentive to maximize the lawful avoidance of capital gain taxation on the sale of those interests, an objective that the judgment also requires him to pursue. To require husband, in addition, under the circumstances described in the second and third contingencies set out above, to share his interest in the retirement accounts with wife, does not appear to us to advance an equitable division of the parties' property. Wife did not contribute to the creation or preservation of those accounts, husband brought the vast bulk of the parties' total assets to the marriage, he is much older than wife and, apart from his retirement accounts and the Johnson Road property, the remainder of the parties' marital estate was equally divided.
Likewise, we conclude that husband should receive as his separate property the $46,500 equity that he invested in the Johnson Road property. The trial court awarded attorney fees to wife as a sanction for husband's use of retirement funds to finance that acquisition. We perceive no ground on which that equity, which was derived from the proceeds of husband's premarital retirement accounts, should be equally divided between the parties. Accordingly, we reduce the equalizing judgment by $23,250, which is one-half of the value that the trial court assigned to that asset.
Husband next challenges the trial court's award to wife of one-half of the value of his medical practice. As wife accurately asserts, there is no evidence in the record as to the value of the practice as of the date of the marriage. Wife asserts that husband had the burden of showing the premarital value of the practice and that, in failing to do so, he also failed to rebut the presumption of her equal contribution to any appreciation in the value of the practice during the marriage. The difficulty with that proposition is that husband did not have the burden of proving the existence of such a marital asset. Moreover, even though the trial court was not required to believe husband's testimony that the practice had not increased in value during the marriage, the court's implied rejection of that testimony did not, by itself, create affirmative evidence that any appreciation existed, let alone establish the amount of any such appreciation. The question remains whether it was nonetheless just and proper for the court to equally divide that asset. We conclude that it was just and proper to do so. The parties had a 12-year relationship. Wife worked for husband in his practice throughout the marriagewithout a salary increasein addition to performing her homemaker contributions. Moreover, as modified by our decision here, husband will receive outright awards of the Johnson Road residence and his retirement accounts. In our view, a just and proper division of the parties' property requires an otherwise equal allocation of their assets.
Finally, husband challenges the trial court's award of indefinite maintenance spousal support to wife in the amount of $8,000 per month. Husband argues that the spousal support award should be reduced to $3,000 per month and that it should terminate when the parties' property is sold, when, as husband sees things, wife will have $1 million in proceeds if the Measure 37 claim is successful. Factors relevant to an award of maintenance support include the duration of the marriage, the ages of the parties, the physical and emotional health of the parties, the standard of living established during the marriage, the parties' relative incomes and earning capacities, the parties' training, employment skills and work experience, their financial resources and needs, and the tax consequences of an award. ORS 107.105(l)(d)(C). In this case, the relevant factors for consideration at the time of trial were (1) each party enjoyed good health; (2) husband was 69 years old and wife was 60; (3) despite his age, husband had no current plans to retire; (4) the parties enjoyed a very comfortable lifestyle during the marriage; (5) husband earned more than $300,000 per year working only 30 hours per week; (6) wife received no income-producing property, unless the parties' Measure 37 claim is successful; (7) the trial court found, and we agree, that wife "lacks the skills necessary to transition into meaningful full time employment"; *427 (8) based on the spousal support award that the court made, the parties' after-tax spendable incomes remain substantially disparate; (9) it was by no means certain that the parties' Measure 37 claim would be successful and, if it was, how much after-tax gain the parties would generate; and (10) wife's total monthly expensesat least while the parties are pursuing their Measure 37 claimwere greater than the amount of support that the trial court awarded.
Under all the circumstances existing at the time of trial in this case and because the award is subject to modification if and when the pertinent circumstances change, or when the parties' marriage is dissolved, we conclude that we cannot meaningfully improve on the spousal support award that the trial court made and, accordingly, we will not disturb it.
Judgment of unlimited separation modified to award husband's retirement accounts and the equity in the Johnson Road property to husband; equalizing judgment reduced to $196,538; otherwise affirmed.
NOTES
[*] Brewer, C.J., vice Landau, P.J.
[1] Although this action proceeded to judgment as an unlimited separation case, the parties assume, and we agree, that the trial court had the same authority to divide the parties' property in such an action as it would have had in a dissolution action. See ORS 107.105(1). We also note that, in its letter opinion, which was incorporated into the judgment of unlimited separation, the trial court stated:

"This matter proceeded as an unlimited separation judgment by the agreement of the parties. The parties further agreed through their attorneys that the court retains jurisdiction over the [M]easure 37 claim so far as it relates to the separation and dissolution and retains jurisdiction to convert this matter to a dissolution of marriage after the [M]easure 37 claims are decided."