Argued and submitted December 7, 2010, on appeal, dissolution judgment modified to increase the equalizing judgment to $1,399,688, otherwise affirmed; affirmed on cross-appeal November 9, 2011

In the Matter of the Marriage of

Mark Alan RODENBECK,
*Petitioner-Respondent*
*Cross-Appellant,*
*and*
Susan Kay RODENBECK,
*Respondent-Appellant*
*Cross-Respondent.*

Clackamas County Circuit Court
DR06110313; A138922

266 P3d 162

George W. Kelly argued the cause and filed the briefs for appellant - cross-respondent.

Mark Johnson Roberts argued the cause for respondent - cross-appellant. With him on the brief was Johnson & Lechman-Su PC.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Wife appeals a marriage dissolution judgment, raising three assignments of error.[1] Specifically, wife challenges (1) the trial court's valuation of husband's ownership interest in a business; (2) the trial court's reduction of the amount that husband owes wife for her marital share of that interest to reflect the taxes that husband expects to pay on the income that he earns to pay wife for her share; and (3) the amount of spousal support that the trial court awarded to wife. Husband cross-appeals, also challenging the amount of spousal support. We reject without discussion the parties' challenges to the spousal support award and write only to address wife's first two assignments of error. On *de novo* review, ORS 19.415(3) (2007),[2] we modify the property division and otherwise affirm.

The parties were married in 1988. At the time of dissolution, husband was 48, wife was 47, and the parties' two children were ages 13 and 16.

Husband and his brother, Gary Rodenbeck, are equal owners of Software Solutions Unlimited, Inc., which is organized as a subchapter S corporation under the Internal Revenue Code. The company's annual income had risen for the five years preceding the dissolution trial, from $791,393 in 2002 to $2,802,805 in 2006, although its year-to-date income as of the end of November 2007 was only $1,840,566.28. The parties acknowledged that wife was entitled to receive in the dissolution one-half of the value of husband's interest in the company, but they disagreed about the value of the company and husband's interest in it.

Gary was asked at the dissolution trial to give his opinion about the income that the company would earn over

---

[1] Senior Judge Lewis, acting as a reference judge, issued the findings of fact, conclusions of law, and general judgment that comprise the marital dissolution judgment from which the parties appeal. Judge Maurer, as the presiding judge, ordered that the judgment be entered as the judgment of the court pursuant to ORS 3.315(6).

[2] The notice of appeal in this case was filed before June 4, 2009; accordingly, the 2009 amendments to ORS 19.415(3) (which grant us discretion to review facts *de novo* in most equity cases) do not apply, and our standard of review is governed by the 2007 version of the statute. *See* Or Laws 2009, ch 231, § 3.

the next 12 months. Gary responded that he was not an expert at forecasting but would guess that the company would earn somewhere between $1,200,000 and $1,500,000 in net income.

Husband and wife each presented expert evidence of the value of husband's interest in the company. Although the experts disagreed about the value of the company and husband's interest in it, they both applied a minority and a marketability discount to determine the value of husband's interest. Wife's expert, Sickler, used two valuation methods, capitalization of income and comparable sales, to value husband's interest in the company at $4,125,000.

Husband's expert, Gilbert, testified on three separate occasions, providing a different value for the company each time as he took into account new information. In August 2007, he determined the value of husband's interest in the company to be $4,360,500. In October, he testified that the value of husband's interest was $3,480,000. He explained that the reduction in value was due to a reduction in the company's sales and earnings between August and October.

Finally, in his December 19 testimony, Gilbert provided two different values for the company. Using a market approach, income approach, and cost approach, Gilbert determined the value of husband's interest to be $2,295,000 based on calculations that he had done that afternoon that were based on Gary's forecast of the company's income. Although Gilbert acknowledged that Gary had no forecasting or other relevant expertise, Gilbert indicated that he had no other forecast for the company's future income.

Gilbert further testified that, up until the afternoon of his testimony, he had valued the company in light of the most recent information on its sales and operations without taking Gary's testimony into account. That analysis valued husband's interest in the company at $3,519,000.

Husband argued, and his expert O'Connell testified, that the court should reduce the value of wife's marital share of husband's interest in the company to reflect the fact that husband will have to use his after-tax earnings to pay wife for her share. In husband's view, fairness required wife to share

the tax burden that husband would bear in generating the income with which to pay wife.

In determining the value of the business, the court indicated that it had concerns that Sickler's testimony was misleading and inaccurate, and therefore, it found Gilbert to be a more credible witness on value. Nonetheless, the court did not adopt any of Gilbert's valuations of the company but instead made its own determination of value. The court forecast that the company's income for the next 12 months would be $1,500,000 and used that amount to determine the value of husband's interest in the company to be $2,572,826. It then determined that the value of wife's share was $1,286,413.

The court decided, based on the testimony of husband's experts, that an adjustment should be made to the value of wife's share of husband's interest in the company to reflect the fact that husband intended to pay the equalizing judgment from income that he earned and on which he would be required to pay taxes. The court determined that husband would pay a combined federal and state tax rate of approximately 37 percent on his earnings. It concluded that equally allocating that tax liability between the parties was just and equitable and, thus, discounted the amount that husband was required to pay wife for her share by 18.5 percent, reducing it from $1,286,413 to $1,048,426.[3] Taking that amount into consideration in its calculations, the court determined that husband owed wife an equalizing judgment of $688,614.

Wife contends that the trial court erred in finding the value of husband's interest in the company to be $2,572,826. Although we review *de novo* in this case,[4] we

---

[3] In dividing marital assets pursuant to a dissolution, a court may not consider the tax consequences of the sale of a marital asset unless a sale is contemplated and there is evidence that it is reasonably certain to occur. *Bidwell and Bidwell,* 170 Or App 239, 244, 12 P3d 76 (2000). Although husband argued here that the court "must also consider the taxes [that] would necessarily be incurred if there were a sale of" the company, he presented no evidence that a sale was contemplated, and the court's decision to reduce wife's share of husband's interest in the company by one half of husband's taxes made no reference to a sale of the company. Moreover, such an adjustment would be based on the taxes owed as a result of such a sale, not on the income that a party might earn that would avoid the need to make such a sale.

[4] *See* 246 Or App at 451 n 1.

defer to the trial court's express and implied credibility findings. *Olson and Olson*, 218 Or App 1, 3, 178 P3d 272 (2008) (quoting *Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000)). Here, the trial court stated that it found Gilbert's testimony to be more credible in light of its concerns about the accuracy of Sickler's testimony, and we thus defer to its finding that Gilbert was a more credible witness.

Reviewing the valuation-related evidence *de novo*, we conclude that the most persuasive valuation of the company is Gilbert's December 19 valuation before he factored in Gary's projected income for the company. We are not persuaded that a valuation based on an off-the-cuff forecast by a nonexpert, who very clearly acknowledged that he was guessing, provides a more accurate value of the company than a value generated exclusively from historical figures. We therefore find that husband's interest in the company has a value of $3,519,000.

Wife further contends that the trial court erred by reducing her share of that value to account for the taxes that husband is expected to incur in earning the money with which he will pay her a portion of her share. Husband argues that wife failed to preserve her argument against that reduction. However, because the assignment of error that we have addressed on *de novo* review concerns the value of husband's interest in the company and wife's concomitant share of that value, the question whether to reduce wife's share is necessarily implicated by wife's challenge to the trial court's valuation of husband's interest in the company.

We readily conclude that it is not just and proper to reduce wife's share. If husband borrowed the money needed to pay wife, it would not be just and proper to adjust the amount owed to her to reflect the interest that husband would pay on the loan. It would be even less sensible to adjust that amount to reflect the taxes that husband would pay on any income that he earned and used to repay the loan. That husband intends to pay wife from the income that he earns— rather than borrowing the money to pay wife and repaying the loan out of that income—does not alter the analysis. Accordingly, we conclude that it is not just and proper to reduce the value of wife's share of husband's interest in the

company to account for taxes husband will owe on the income that he uses to pay wife.

Wife is entitled to receive $1,759,500, one half of the value of husband's $3,519,000 interest in the company. The difference between our valuation of wife's share on *de novo* review ($1,759,500) and the trial court's valuation ($1,048,426) is $711,074. Because we alter no other values that the trial court took into account in determining wife's equalizing judgment, that judgment ($688,614) should be increased by $711,074, for a total equalizing judgment of $1,399,688.

On appeal, dissolution judgment modified to increase the equalizing judgment to $1,399,688; otherwise affirmed. Affirmed on cross-appeal.